[Civil No. 2625.   Filed June 27, 1927.]

[257 Pac. 644.]

THE OCEAN ACCIDENT AND GUARANTEE CORPORATION, LIMITED, a Corporation, Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA and R. B. SIMS, BURT H. CLINGAN and H. S. McCLUSKEY, Members of Said THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

276

Messrs. Kibbey, Bennett, Gust, Smith & Lyman for Petitioner.

Mr. John J. Taheny for Respondents.

LOCKWOOD, J.—Charles H. Goodson was injured while employed by the United Building & Finance Company, hereinafter called the contractor, in the construction of a building in the town of Yuma, state of Arizona, on the twenty-first day of August, 1926. It is admitted the injury which he suffered arose out of and in the course of the work which he was employed by the contractor to do. There is some question as to where Goodson was originally employed, it being contended by petitioner herein that the contract of employment was made in the state of California, while Goodson claimed it was made in Arizona. No findings on this point were made by the Industrial Commission, but for the purpose of the case we shall assume it was made in California.

Petitioner admitted that Goodson was entitled to compensation for his injury, but insisted the award should be made in accordance with the Workmen's Compensation Law of California (Stats. 1913, p. 279, as amended). Goodson's claim was made under the Arizona Workmen's Compensation Law (Laws 1925, chap. 83), and the Industrial Commission made its award and assessed its benefits in accordance with the terms of the latter statute. The sole question for our determination is, assuming the contract of employment to have been made in California, should compensation have been awarded under the terms of the California statute, or in accordance with the provisions of the Arizona law?

Petitioner's position is based on two propositions, which we will briefly summarize as follows: First, Workmen's Compensation Laws are based on the theory that when a contract of employment is entered into the parties have agreed that the law shall become a part of the contract. When the contract of employment was made between Goodson and the contractor, the Compensation Law of California became a part thereof. The right of an injured employee to recover compensation arising only from a contract of employment, any claim must be based on the contract, and in interpreting the latter the authorities of Arizona will necessarily include as a part thereof the provisions of the California compensation law. Second, even though the Arizona authorities are not bound under the rules of comity and as a matter of common law to adopt this theory, the Arizona Workmen's Compensation Act itself, in section 59, expressly limits the right to recover in cases like this to the Compensation Law of the state where the contract of employment was made. We will discuss these two contentions in their order.

A great deal of confusion in regard to the principle at the bottom of the various Workmen's Compensa-

tion Laws of the different states has arisen to some extent as a result of the famous case of *Ives* v. *South Buffalo R. Co.*, 201 N. Y. 271, Ann. Cas. 1912B 156, 34 L. R. A. (N. S.) 162, 94 N. E. 431. The first Workmen's Compensation Acts were adopted in Europe, but the movement quickly spread to the United States, and among the earliest of our commonwealths to realize their value was the state of New York. In 1910 (Laws 1910, chap. 674) that state adopted a statute providing for compulsory compensation to workmen engaged in certain dangerous employments. The act gave no option to either employer or employee as to whether or not they should come under its provisions. The highest court of New York, in the case above cited, stated it wrote into the contract of employer and employee, *"without the consent of the former,* a liability on his part which never existed before and to which he is permitted to interpose practically no defense . . . " (italics ours), and held the act unconstitutional.

Many of the other states were engaged in discussing the advisability of adopting some form of Compensation Law, and in their natural desire to avoid the objections which caused the New York statute to be held unconstitutional, worded their acts accordingly. But of even greater influence on these acts was the fact that most men, and particularly most lawyers, were still governed by the old school of economics of which Adam Smith, Ricardo, Malthus, and Mills were shining lights, and in which the doctrine of *laissez faire* was considered to be the rule which the state should observe in regard to the relation of employer and employee. It was under the influence of these ideas that the fellow-servant rule and that of assumption of risk were applied to an industrial civilization for which they were utterly unfitted, and it was gravely insisted by bench, bar and the leaders of society that the individual work-

ing man, without money, friends or influence, must be "protected" in his right to contract freely with his employer, by this time generally a corporation with immense resources, and no personal touch with or interest in its employees; which considered labor as a mere commodity to be bought at the cheapest possible price, used till worn out, and then scrapped like any other worn-out tool. Our enlightened modern thought realizes that an equality of bargaining power between two such unequal parties is impossible, and has attempted to equalize the balance through the labor unions and state regulation of industry; but old ideas die hard, and the pathways of progress are strewn with the fragments of legislation designed for this purpose but wrecked on the insistence of court after court that the state must not interfere with the "free right of contract." The eight-hour day, protection for women and children in industry, and every reform which has lightened the burden and brightened the life of the workman has had to fight its way up against this insistence on applying a philosophy which was perhaps just enough at one time, to a civilization which has outgrown it as the grown man has the swaddling clothes of the babe.

Most of the Workmen's Compensation Acts of the second decade of this century show on their face an attempt to introduce a radical extension of the principle that the state may regulate the conditions of industry as it will in the interests of the public, under language which preserved the *form* of freedom of contract, while denying it in effect. Many, if not most, of the statutes which insisted they were entirely optional in character gave no more real choice than does the highwayman who presents a pistol at the head of his victim with the "choice" of "your money or your life." And many a court has, following the form, based its construction of

these acts on the theory that they were essentially a part of a contract between the employer and employee, and from this premise, true in form, but false in substance, have flowed many results logical enough had the premise been true, but utterly false when the true theory of the laws is considered.

Following the reasoning above described, it has been repeatedly held, in states where the Workmen's Compensation Act and its application is optional and contractual in form, that where a workman was employed in one state but injured in another, the authorities of the latter state, in proceedings brought therein, would, if there were any right of recovery at all, apply the statute of the state where the contract of employment was made, and not of the state where the accident occurred, in determining the benefits to be awarded. *Hopkins* v. *Matchless Metal Polish Co.*, 99 Conn. 457, 121 Atl. 828, and cases cited therein.

The state of New York amended its Constitution in 1913 to meet the objections of the court in the Ives case, and the new statute passed under such amendment was tested in the case of *N. Y. Cent. R. Co.* v. *White,* 243 U. S. 188, Ann. Cas. 1917D, 629, L. R. A. 1917D, 61 L. Ed. 667, 37 Sup. Ct. Rep. 247, which finally reached the Supreme Court of the United States and was determined by it early in 1917. The case of *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, Ann. Cas. 1917D 642, 61 L. Ed. 685, 37 Sup. Ct. Rep. 260, decided the same term, involved another compensation statute compulsory in its nature. In both of these cases the law is upheld substantially on the ground that it is within the general police power of the state to provide a system of compulsory compensation for injuries, throwing the burden thereof upon the particular industry in which the injury occurred. The following quotation, taken

from the last-cited case, shows clearly the reasoning of the court:

"We are clearly of the opinion that a state, in the exercise of its power to pass such legislation as reasonably is deemed to be necessary to promote the health, safety, and general welfare of its people, may regulate the carrying on of industrial occupations that frequently and inevitably produce personal injuries and disability, with consequent loss of earning power, among the men and women employed, and occasionally loss of life of those who have wives and children or other relations dependent upon them for support, and may require that these human losses shall be charged against the industry, either directly, as is done in the case of the act sustained in *New York C. R. Co.* v. *White,* 243 U. S. 188, 37 Sup. Ct. Rep. 247, *ante* [61 L. Ed.] 667 [L. R. A. 1917D 1, Ann. Cas. 1917D 629] or by publicly administering the compensation and distributing the cost among the industries affected by means of a reasonable system of occupation taxes. The act cannot be deemed oppressive to any class of occupation, provided the scale of compensation is reasonable, unless the loss of human life and limb is found in experience to be so great that, if charged to the industry, it leaves no sufficient margin for reasonable profits. But certainly, if any industry involves so great a human wastage as to leave no fair profit beyond it, the state is at liberty, in the interest of the safety and welfare of its people, to prohibit such an industry altogether."

In these two cases the highest tribunal in the land, which, contrary to the view held by some who have not followed its decisions closely, is always in the van in its recognition of new conditions requiring a revision of archaic ideas of law, discarded the old fiction that Compensation Acts must be based ostensibly on contract and justified them by the police power of the state. The ground was thus cleared for the states to place themselves on a modern and scientific basis in industrial legislation, and

some of them have availed themselves of the opportunity, among them being our own commonwealth.

The first Arizona Compensation Law which became a part of the Revised Statutes of 1913 (Civ. Code), as chapter 7, title 14, thereof, was no exception to the general rule then prevailing, for paragraph 3176 thereof expressly states:

"The employer and the workman shall alike be bound by and shall have each and every benefit and right given in this chapter *the same as if a mutual contract to that effect were entered into between the employer and the workman at any time before the happening of any accident.* It shall be lawful, however, for the employer and workman to disaffirm an employment under the provisions of this chapter by written contract between them or by written notice. . . . " (Italics ours.)

Almost from the adoption of this act it appeared both to workmen and employers in the state of Arizona that the system of compensation for industrial injuries was inadequate and unsatisfactory, and after many attempts to agree on a new law satisfactory to all parties, in 1925 the legislature submitted to the people an amendment to the Constitution of Arizona, and at the same session adopted chapter 83, Session Laws of that year, as the Compensation Act, to become effective in case the amendment carried. This act, so far at least as the employer is concerned, is compulsory in its nature; he has no option as to whether he shall accept or reject it, and the whole language both of the constitutional amendment authorizing it and of the act itself shows clearly that they were based, not on the old theory of contract between the parties, but upon the inherent right of the state, recognized by the Supreme Court of the United States in the cases above cited, by virtue of its police power to establish certain rules regulating the status of employer and employee. We therefore hold that the present Arizona Workmen's Com-

pensation Act is neither elective nor contractual in its nature, but, on the contrary, that it rests upon the police power *to regulate the status of employer and employee* within the state of Arizona, and that no contract, express or implied, made within or without the state of Arizona, unless expressly so authorized by our law, can of itself affect the rights and duties of such status. It is governed, so far as this subject is concerned, solely by the provisions of the Arizona statutes, and nothing else. The right of Goodson to recover compensation so far as the Arizona tribunals are concerned, therefore, was governed by the Workmen's Compensation Act of Arizona, and the California statute would apply only in so far as the Arizona statute expressly allowed it to do so.

But it is contended on behalf of petitioner that section 59 of the Arizona law does expressly limit the rights of Goodson to compensation under the California statute. Let us see if this be true. This section reads as follows:

"Section 59. *Compensation to Workmen Hired or Injured in or out of State.*—If a workman who has been hired or is regularly employed in this state receives a personal injury by accident arising out of and in the course of such employment, he shall be entitled to compensation according to the law of this state as provided for in this act, even though such injury was received outside of this state. If a workman who has been hired outside of this state is injured while engaged in his employer's business, and is entitled to compensation for such injury under the law of the state where he was hired, he shall be entitled to enforce against his employer his rights in this state if his rights are such that they can reasonably be determined and dealt with by the commission and the courts in this state."

As we have just stated, the effect of the new Compensation Law was to regulate the status of employer

and employee within this state. In so doing it necessarily declared the public policy of the state. The title of the constitutional amendment as submitted shows that one of the most important objects of that policy was to make compensation equal and certain, and the whole language of the statute shows that it is remedial in its nature and is to be construed liberally for the protection of those coming within its provisions. *Federal Mut. L. Ins. Co.* v. *Industrial Com.*, 31 Ariz. 224, 252 Pac. 512.

There are three, and only three, cases in which the question of liability under a Compensation Act might be brought before our tribunals. In the first, the status of employer and employee would arise and the accident occur in this state; in the second, one of those events would occur in this state and one without; while in the third both events would occur out of the state. In the first case, obviously our tribunals recognize our act, and it alone, both as to procedure and benefits. In the second case, since our statute is one regulating the status, if the injury occur in the state our law governs, and under the first sentence of section 59, *supra*, if the status of employer and employee arises in Arizona, so far as our tribunals are concerned, it will also govern, even though the accident occur elsewhere. This leaves uncovered by the statute only the third case, viz., when the status arises and the accident occurs *both* outside the jurisdiction of our forums. Such a situation has been brought before the courts many times and the decisions are varied. Bradbury's Workmen's Compensation Laws (3d ed.), pp. 95–101, and cases cited.

Certainly this possibility is covered by the language, "A workman who has been hired outside of this state is injured while engaged in his employer's business." It will be urged that the language does not expressly state the place of injury

*must* be *outside* of the state. This is true, but the construction we have given it will make the act provide one and one only certain and definite compensation for each possible class of cases, while any other view would make the basis of the compensation uncertain and unequal for like injuries arising from like causes, contrary to the policy of this state. We therefore hold that the last sentence of section 59, *supra,* applies only to cases where the status and injury both arise outside of Arizona.

For the reasons herein stated, the Industrial Commission rightly held that so long as the injury occurred in Arizona the benefits were governed by our statute.

It is contended that this construction will mean that employers operating in many states must inform themselves as to the Workmen's Compensation Act of each state into which they send their employees, and that this would impose an intolerable burden upon them. Such a burden, however, is no greater than that which would be imposed upon the Industrial Commission and the courts of this state in attempting to enforce the Compensation Acts of the places where the contract of employment was made. And the hardship which might be placed upon the employer by such a construction is small, indeed, compared to the very possible evil which might result from the contrary view of the law. It is a well-known fact that many years ago the Arizona legislature passed what is known as an "Anti-Blacklisting Law," and that in order to avoid the provisions of this law some employers of labor insisted that all contracts of employment should be made outside the state, although the work was to be performed within it, thus nullifying the statute. If we accept the construction placed by petitioner upon the law, it will be entirely possible for large employers of labor to select a state where the benefits of the Com-

pensation Law are extremely small, and by making their contracts of employment in that state, reduce to a great extent the benefits which the public policy of this state has declared should accrue to the injured workman. We do not think a construction making such a thing even possible is one which should be adopted unless it is unavoidable. The rule which we have laid down will make benefits for injuries of the same kind arising under the same circumstances uniform and certain, and insure that all persons holding the status of employee within this state will be insured the protection of its beneficent laws.

For the foregoing reasons the award of the Industrial Commission is affirmed.

ROSS, C. J., and McALISTER, J., concur.