HENRY J. SORENSON v. STANDARD CONSTRUCTION
COMPANY, INC., AND ANOTHER.
NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU
AND VAL BJORNSON, STATE TREASURER, AS CUSTODIAN
OF SPECIAL COMPENSATION FUND, INTERVENERS.[1]

November 14, 1952.

No. 35,751.

*William A. Cole,* for relators.
*C. E. Warner* and *Ralph Foster,* for respondent.

CHRISTIANSON, JUSTICE.

Certiorari upon the relation of Standard Construction Company, Inc., employer, and Associated Indemnity Corporation, insurer, to

[1]Reported in 55 N. W. (2d) 630.

review an award of the industrial commission to Henry J. Sorenson, employe.

The employe, a resident of Minneapolis, was employed on August 26, 1947, to work at Minot, North Dakota, under a Minnesota contract of employment with the employer, which had its principal place of business in Minnesota. On September 11, 1947, while in the employ of the employer in Minot, the employe received an injury arising out of and in the course of employment. He filed a claim petition with the North Dakota workmen's compensation bureau on September 16, 1947, and thereafter voluntarily accepted payments of compensation totaling $3,116.72, and all medical expenses incurred. The award was based upon a healing period from September 11, 1947, through July 15, 1949, and ten percent permanent partial disability of the entire body.

On February 1, 1951, the employe filed a claim petition with the Minnesota industrial commission for benefits under the Minnesota workmen's compensation act. A hearing was had before referee Joseph Harkness, who, after making findings of fact, determined that the employe was entitled to compensation for temporary total disability from September 11, 1947, to September 11, 1951, in the amount of $5,653.80, less the compensation previously received in the amount of $3,116.72, the difference being $2,537.08; compensation for permanent total disability thereafter in a total amount not to exceed $10,000; and payment of certain medical expenses.

On appeal to the industrial commission the determination of the referee was modified by striking out the provision for compensation for permanent total disability and substituting a provision for continued benefits for temporary total disability for the balance of a 300-week period. It is the determination of the industrial commission that is now under review.

The question for decision is: Where a Minnesota resident working in North Dakota for a Minnesota employer under a Minnesota contract of employment receives an injury covered by both the Minnesota and North Dakota workmen's compensation acts and is awarded compensation upon his own petition by the North Dakota

workmen's compensation bureau, does the North Dakota award bar an additional award by the Minnesota industrial commission of the difference between the amounts of compensation under the two acts?

In Magnolia Petroleum Co. v. Hunt, 320 U. S. 430, 64 S. Ct. 208, 88 L. ed. 149, 150 A. L. R. 413, a Louisiana resident was injured while working in Texas under a Louisiana contract of employment and received an award under the Texas workmen's compensation act. The United States Supreme Court in a five-to-four decision held that he was precluded from recovering an amount in excess of the Texas award to which he otherwise would be entitled under the Louisiana act on the ground that the Louisiana courts were required to give the same full faith and credit to the Texas award as they were required to give to a judgment of a court.[2]

The question again came before the Supreme Court in Industrial Comm. of Wisconsin v. McCartin, 330 U. S. 622, 67 S. Ct. 886, 91 L. ed. 1140, 169 A. L. R. 1179, in which a resident of Illinois, employed by an Illinois employer under an Illinois contract of employment, was injured while working for the employer in Wisconsin. He received compensation under the Illinois workmen's compensation act and later was awarded additional compensation under the more liberal Wisconsin act. The court held that the Illinois award did not bar a subsequent award under the Wisconsin act because (330 U. S. 627, 67 S. Ct. 889, 91 L. ed. 1143)—

---

[2] U. S. Const. art. IV, § 1, provides:

"Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

28 USCA, § 1738, provides in part:

"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

"* * * there is nothing in the [Illinois] statute or in the decisions thereunder to indicate that it is completely exclusive, that it is designed to preclude any recovery by proceedings brought in another state for injuries received there in the course of an Illinois employment. * * * And in light of the rule that workmen's compensation laws are to be liberally construed in furtherance of the purpose for which they were enacted, * * * we should not readily interpret such a statute so as to cut off an employee's right to sue under other legislation passed for his benefit. Only some unmistakable language by a state legislature or judiciary would warrant our accepting such a construction. Especially is this true where the rights affected are those arising under legislation of another state and where the full faith and credit provision of the United States Constitution is brought into play."

This court considered the question recently in Cook v. Minneapolis Bridge Const. Co. 231 Minn. 433, 43 N. W. (2d) 792, which involved facts substantially identical to those in the instant case. There, a resident of Minnesota was employed by a Minnesota employer under a Minnesota contract of employment. The employe was injured while working for the employer in North Dakota. He received benefits under the North Dakota workmen's compensation act and later brought proceedings in Minnesota to recover the difference between the compensation to which he was entitled under the Minnesota act and the award he had received under the North Dakota act. The referee held that the employe could not recover under the Minnesota act, but the industrial commission reversed the determination of the referee. On certiorari this court, relying upon the McCartin case, affirmed the order of the industrial commission on the grounds that there was nothing in the language of the North Dakota act which made it completely exclusive so as to preclude recovery by proceedings in another state where the employe and employer resided and where the contract of employment was consummated.

Relators concede that the question involved in the instant case is the same as that presented to the court in the Cook case, but they urge that the Cook case should be overruled.

Relators point out that in the Cook opinion, in considering the Magnolia Petroleum Company case, this court discussed a restriction in the Texas act not found in the North Dakota act which provides that the employe cannot recover under the Texas act if he has elected to pursue his remedy and recovers in another state where the injury occurred. They argue that such provision applies to the converse of the situation presented in the Magnolia Petroleum Company and Cook cases; that it is completely irrelevant to the situation in those cases; and that it is not a proper means of distinguishing the North Dakota act from the Texas act as they apply to that situation. Assuming without deciding that relators' argument is sound, it nevertheless presents no reason for overruling the Cook case. This court's decision in the Cook case was not based upon the lack of that particular provision but rather upon the lack of any unmistakable language making the North Dakota act completely exclusive so as to preclude recovery by proceedings in another state after the injured employe has received workmen's compensation from the North Dakota workmen's compensation bureau. Each pertinent provision of the North Dakota act[3] was examined

[3]5 North Dakota Rev. Code 1943, § 65-0101, provides in part:

"* * * sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, and to that end, all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are abolished except as is otherwise provided in this title."

5 North Dakota Rev. Code 1943, § 65-0108, provides:

"An employer securing the payment of compensation to his employees by contributing premiums to the fund shall be relieved thereby of all liability for personal injuries or death sustained by his employees, and the persons entitled to compensation under the provisions of this title shall have recourse therefor only to the fund and not to the employer."

5 North Dakota Rev. Code 1943, § 65-0506, provides:

"The payment of compensation or other benefits by the bureau to an injured employee, or to his dependents in case death has ensued, shall be

in the light of the test laid down in the McCartin case and was found to bar the employe's rights against the employer only insofar as those rights arose under the statutes or common law of North Dakota.

These same provisions were in effect at the time the award by the North Dakota workmen's compensation bureau was made in the instant case. The North Dakota legislature made certain amendments to its workmen's compensation act by Laws of North Dakota 1951, c. 342.[4] However, since these amendments contain no language indicating that they were to apply to awards made before they were enacted, we need not decide whether they unmistakably show an intent that an award under the North Dakota act shall preclude recovery in subsequent proceedings brought in another state. For the same reason we do not consider whether the North Dakota legislature has power to give such an effect to past awards.

Finally, relators rely upon an opinion of the North Dakota attorney general, dated June 11, 1951, on the following question:

"* * * are the North Dakota Workmen's Compensation statutes intended to be final and conclusive in determining all the employes

in lieu of any and all rights of action whatsoever against the employer of the injured or deceased employee."

[4]Laws of North Dakota 1951, c. 342, § 1, amended 5 North Dakota Rev. Code 1943, § 65-0108, to read:

"Where a local or out of state employer has secured the payment of compensation to his employees by contributing premiums to the fund, the employee, and the parents of a minor employee, or the representatives or beneficiaries of either, shall have no right of action against such contributing employer or against any agent, servant, or other employee of such employer for damages for personal injuries, but shall look solely to the fund for compensation."

Laws of North Dakota 1951, c. 342, § 2, amended 5 North Dakota Rev. Code 1943, § 65-0503, to read:

"The bureau shall have full power and authority to hear and determine all questions within its jurisdiction, and its decisions, except as provided in chapter 10, of this title, shall be final and shall be entitled to the same faith and credit as a judgment of a court of record. * * *"

rights against the employer and insurer growing out of an injury in the course of the employment in the State of North Dakota."

After quoting from the pertinent sections of the act as they stood at the time of the Cook case, and at the time of the award by the North Dakota bureau in the instant case, the opinion states:

"The language of these sections is clear and definite, that when an employer contributes to the fund he shall be protected from all liabilities for personal injury. The North Dakota Workmen's Compensation law and coverage is compulsory and is not within the discretion of the employer whether or not he shall participate in the fund. This clearly shows that the fund was intended to be completely exclusive.

"It is therefore my opinion that the injured employe, injured in the course of employment notwithstanding third party tort feasor, shall have recourse only to the fund."

It is not clear from the opinion within what context the question was presented to the North Dakota attorney general—whether the facts he considered were similar to those in the instant case, whether the employe wished to recover from the employer or a third-party tortfeasor under the common law or another statute of North Dakota, or whether some entirely different set of facts was involved. The attorney general's statement that the fund was intended to be completely exclusive has little meaning in the abstract and cannot be given even persuasive force in this case unless it refers to facts similar to those under consideration.

But even if it clearly appeared that the North Dakota attorney general was considering the precise question involved in the instant case on identical facts, we are not bound by his opinion. Notwithstanding that it is an opinion given pursuant to statute[5] by a constitutional officer required to be learned in the law,[6] it is only an

<hr/>

[5] North Dakota Rev. Code 1943, § 54-1201.

[6] Const. of North Dakota, 3 North Dakota Rev. Code 1943, §§ 82 and 83; see, Enge v. Cass, 28 N. D. 219, 148 N. W. 607.

opinion. The North Dakota legislature has not given it any higher standing, and the supreme court of that state has said:

"* * * But the attorney general does not, and is not intended to, supplant the courts in such cases. He gives his opinions for the guidance of the state officers until such questions as concern them are passed upon by the courts." State ex rel. Johnson v. Baker, 74 N. D. 244, 277, 21 N. W. (2d) 355, 372.

It hardly need be stated that the opinion of the North Dakota attorney general has no higher standing in this state than it has in his own state and that it will be given only such persuasive force as its reasoning and his presumed familiarity with North Dakota law might warrant.

We find nothing in the attorney general's opinion or in the arguments of relators which persuades us to overrule Cook v. Minneapolis Bridge Const. Co. It follows that the determination of the industrial commission should be affirmed.

Writ discharged and order affirmed.

Respondent-employe is allowed $250 attorneys' fees in this court.