286 P.2d 214

Joan Greenway COLLINS, widow, and Carroll Lee Collins, minor child of Adolphus Henry Collins, deceased, Petitioners,

v.

AMERICAN BUSLINES, Inc., Respondent Employer,

The Industrial Commission of Arizona, Respondent Insurance Carrier.

No. 5977.

Supreme Court of Arizona.

June 28, 1955.

Lewis, Roca, Scoville & Beauchamp and Walter Cheifetz, Phoenix, for petitioners.

Robert K. Park, Phoenix, John R. Franks, Donald J. Morgan, Phoenix, and John F. Mills, Prescott, of counsel, for respondent Industrial Commission.

## LA PRADE, Chief Justice.

Review by certiorari of a determination of the Arizona Industrial Commission that it was without jurisdiction to hear a claim for compensation allegedly caused by the death of petitioner's husband while in the course of his employment.

The facts are these: Adolphus Henry Collins was employed as a bus driver by the American Buslines, Inc., a Nebraska corporation, in 1944, at El Paso, Texas. During the years of his employment he drove various bus routes throughout the Southwest. At the time of his death Collins was driving a bus route between Los Angeles, California and Phoenix, Arizona, from a home terminal in Los Angeles, where he was paid and lived with his family. On September 30, 1953, Collins was driving a regular return trip from Phoenix to Los Angeles. Near Ehrenburg, Arizona, a bus tire blew out and the resulting accident caused Collins' death. It was found by the Industrial Commission that the American Buslines, Inc., was not certified by the Arizona Corporation Commission to engage in intrastate commerce and that the bus company operated exclusively in interstate commerce. It was further found that Collins was covered by the workmen's compensation provisions of the state of California.

The Commission concluded that it was without jurisdiction to entertain petitioner's claim for the reason that decedent was not regularly employed in Arizona as that term is used in our workmen's compensation statute, Section 56–928, A.C.A.Cum.Supp. 1952. Petitioner appeals from this determination alleging error.

The case presents two questions: (1) was decedent, as a matter of law, not regularly employed in the state as contemplated by our workmen's compensation statute; and (2) is the Arizona Industrial Commission

without jurisdiction in this case for the reason that petitioner was killed while engaged exclusively in interstate commerce and covered by the workmen's compensation laws of California?

The Commission held that decedent was not regularly employed within the contemplation of our workmen's compensation laws for the reason that he was hired outside of this state and divided his work between Arizona and California. The Commission based this conclusion on our decision of Industrial Commission v. Watson Bros. Transp. Co., Inc., 1953, 75 Ariz. 357, 256 P.2d 730. Petitioner contends that this definition of "regularly employed" is without support in our statute.

On reviewing the Watson case, supra, it is to be noted that the question directly presented there was whether imposition of our workmen's compensation laws so as to obtain insurance premiums from an interstate employer would constitute an undue burden on interstate commerce. The case did not concern a claim for compensation by an injured employee. We held that the Commission could not require an employer to pay insurance premiums covering employees engaged in interstate commerce, who lived and were hired in other states, and who were covered by the workmen's compensation laws of another state while within Arizona. It was our view that this would compel the employer to obtain duplicate protection, and that such double premium payment would be an undue burden on interstate commerce. The employees in question were able to present their claims for injuries received in Arizona in another jurisdiction, for if such employees were not covered by the workmen's compensation laws of another state then there would have been no duplication upon which an undue burden could be said to exist, and in that event we pointed out that under the authority of Hall v. Industrial Commission of Ohio, 1936, 131 Ohio St. 416, 3 N.E.2d 367, there would be no constitutional restriction on the imposition of our workmen's compensation laws. The theory of the Watson decision was that an injured employee was to be limited in his choice of jurisdictions but not excluded altogether from an opportunity to benefit under workmen's compensation laws.

There is a vast distinction between the holding of the Watson case, supra, and the language found there and relied upon by the Commission. The definition of "regularly employed" followed by the Industrial Commission excludes employees from the benefits of our workmen's compensation statute without any consideration of their coverage in other jurisdictions. In short, such employees may be left remediless under this definition.

We feel constrained to review the construction of the term "regularly employed" enunciated in the Watson case and followed by the Commission here, for two reasons; first, the Watson case did not directly raise the question of the status of a claim by an

injured employee who divides his work between this and another state as does the case at bar, and secondly, we hesitate to construe our workmen's compensation laws in a manner as to exclude employees injured in Arizona unless such construction is clearly required by the terms of the statute.

■ We have stated many times that our workmen's compensation laws are to be liberally construed, State ex rel. Industrial Commission v. Pressley, 1952, 74 Ariz. 412, 250 P.2d 992; Federal Mut. Liability Ins. Co. v. Industrial Commission of Arizona, 1926, 31 Ariz. 224, 252 P. 512; to place the burden of industrial accidents on industry rather than on the employee or the public. Statutory construction which excludes employees from its protection will require specific language to that effect. Marshall v. Industrial Commission, 1945, 62 Ariz. 230, 156 P.2d 729. Ambiguity is insufficient for then the question is to be resolved in favor of the employee rather than against him. English v. Industrial Commission, 1951, 73 Ariz. 86, 237 P.2d 815; Ossic v. Verde Central Mines, 1935, 46 Ariz. 176, 49 P.2d 396.

The term "regularly employed" is defined in Section 56–928(a), A.C.A.1952 Cum. Supp., as

"* * * all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession, or occupation of an employer."

The statute does not require that an employee hired elsewhere must work exclusively or continuously within this state to be considered regularly employed. A portion of the year is sufficient. Decedent had been employed by respondent-employer since 1944 to the time of his death. When killed in Arizona decedent was following a bus schedule which systematically required him to spend approximately forty percent of his working time in this state. Decedent worked "only a portion of the year" in this state but that is all the statute requires. We find no specific language in our statute indicating that when decedent was killed in Arizona he was not regularly employed within the provisions of Section 56–928(a), supra.

■ Should the fact that decedent did not work exclusively within this jurisdiction affect our decision? We think not. An employee injured while within a jurisdiction temporarily has been held entitled to compensation in the state where the injury occurred, Johnson v. El Dorado Creosoting Co., La.App.1954, 71 So.2d 613; Pacific Employers Ins. Co. v. Industrial Commission of California, 1939, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940, and even if some other jurisdiction would entertain the claim. The paramount interest of the state where the injury occurs was recognized in Pacific Employers Ins. Co. v. Industrial Accident Commission of California, supra, where the court observed at page 503 of 306 U.S., at page 633 of 59 S.Ct.:

" * * * Few matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power. * * * (than) the bodily safety and economic protection of employees injured within it."

In support of this view Larson points out in 2 Larson, The Law of Workmen's Compensation, 382, section 87:23 (1952):

" * * * the physical presence of the injured man within the state must concern the state. His medical and hospital bills are owed to local residents, who should not be required to go to foreign states for payment; the witnesses to the accident are within the state, and most of the best evidence bearing on the circumstances of the injury; * * * and, * * * the mere presence of a disabled and destitute human being within a state's borders is a social problem of concern to that state since the man may become a public charge if not provided for by compensation law."

The accident, when it occurs here, leads to all the consequences which our workmen's compensation laws were designed to avoid. Where an employee has been and where he may go cannot alter what occurs while he is here, and the latter is the concern of this state. Ocean Accident and Guarantee Corporation, Ltd. v. Industrial Commission of Arizona, 1927, 32 Ariz. 275, 257 P. 644. We see no limitation in the language or policy of our workmen's compensation laws which would compel us to conclude that the people of Arizona have not intended to protect employees or themselves from absorbing the impact of industrial accidents occurring in Arizona because an employer requires his employees to divide their work between two states, and to the extent our case of Industrial Commission v. Watson Bros. Transp. Co., Inc., supra, indicates the contrary it is repudiated.

The next question presented by this appeal is whether the commerce clause, U. S. Constitution, Article I, Section 8, makes inapplicable our workmen's compensation laws for the reason that decedent was engaged exclusively in interstate commerce when killed in Arizona, and was covered under the workmen's compensation laws of California.

There appears to be no federal legislation specifically or impliedly prohibiting the states from applying workmen's compensation laws to the employees of interstate motor carriers. The Federal Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq., does not alter this view for it contains no provisions for compensating injured employees or language which restricts the states. Basham v. Southeastern Motor Truck Lines, Inc., 1947, 184 Tenn. 532, 201 S.W.2d 678; Hall v. Industrial Commission of Ohio, supra; Etters v. Trailways of New England, Inc., 1943, 266 App.Div. 929, 43 N.Y.S.2d 884; State ex rel. Washington Motor Coach Co. v. Kelly, 1937, 192

Wash. 394, 74 P.2d 16. This has been recognized by us in Industrial Commission v. Watson Bros. Transp. Co., supra.

While no specific federal legislation prohibits the application of state workmen's compensation laws this does not mean that no restraints exist upon state activities. A further limitation must be recognized. In Southern Pac. Co. v. State of Arizona ex rel. Sullivan, 1945, 325 U.S. 761, at pages 766, 767, 65 S.Ct. 1515, at page 1519, 89 L.Ed. 1915 (the train limit case), the U. S. Supreme Court observed, in part:

> "Although the commerce clause conferred on the national government power to regulate commerce, its possession of the power does not exclude all state power of regulation. * * * it has been recognized that, in the absence of conflicting legislation by Congress, there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it. * * * But * * * the states have not been deemed to have authority to impede substantially the free flow of commerce from state to state, * * *." (Citations omitted.)

Therefore, the question we are faced with is whether application of our workmen's compensation laws would constitute an undue burden on interstate commerce under the facts of this case, in the absence of federal legislation.

■ In the Watson case we held that exacting double premiums, under the facts there, would be an undue burden. The case at bar involves a claim for compensation rather than a suit to obtain insurance premiums, and the possibility that double compensation would result from an award in this and another state is highly improbable. Under the doctrine of Magnolia Petroleum Co. v. Hunt, 1943, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, 150 A.L.R. 413, the prior award would be res judicata between the parties and entitled to full faith and credit, and under the modifying opinion of the subsequent case of Industrial Commission of Wisconsin v. McCartin, 1947, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140, 169 A.L.R. 1179, a first award would be credited to the second and result in only one total compensation. Yet while duplicate compensation is no threat, can jurisdiction to establish liability under our laws be reconciled with our holding in the Watson case? Premium payments, under our laws, are for the purpose of insuring against possible liability under our laws. If no jurisdiction exists upon which the Arizona Industrial Commission can lawfully exact premiums, does that necessarily imply that we are without jurisdiction to establish liability on the same set of facts? We fail to see how the rules may differ.

■ If jurisdiction exists to find employer liability, the reason for premiums exists in full force—the threat of this liability. Employers insure for no other

reason. An employer who engages in business in various jurisdictions, all of which will extend jurisdiction to an injured employee for the same injury, cannot anticipate which state's laws will be invoked by the employee. Under such conditions his only recourse would be to establish protection from liability in all such states by the payment of insurance premiums. The threat of liability would require duplicate premiums and it is this duplication which creates the undue burden on interstate commerce. It is the need imposed by the laws of our state to insure twice that constitutes the undue burden, not the manner in which this duplication is obtained. We hold that to assume jurisdiction under our workmen's compensation laws on the facts of this case would constitute an undue burden on interstate commerce. Since the respondent-employer here is engaged exclusively in interstate commerce the case of Holly v. Industrial Commission, 1943, 142 Ohio St. 79, 50 N.E.2d 152, 148 A.L.R. 868, cited by petitioner, is not in point.

Petitioner argues that to deprive the Commission of jurisdiction may leave her remediless in a limbo of interstate commerce. The thought is that if we decline jurisdiction for the reason that decedent was engaged in interstate commerce then other states may do the same, and since no federal compensation plan exists no remedy would be available. We fail to see how this result can obtain under our decision here or in the Watson case. We do not decline jurisdiction merely for the reason that decedent was engaged in interstate commerce, but in view of an additional consideration—that he was also covered in another jurisdiction. If decedent had not been covered in California then there would be no duplication upon which to find an undue burden; it is not the application of state workmen's compensation laws which is prohibited under our interpretation of the commerce clause but a double application.

Petitioner contends that we should not defer to the workmen's compensation laws of another state because we cannot control such other jurisdictions and are unable to provide relief to petitioner. The error in this contention is twofold. The existence of duplicate protection imposing a burden on interstate commerce requires at least two states. Between the two it is not automatically the obligation of Arizona to defer to the other in the interests of interstate commerce. A preliminary question, latent here as in the Watson case, must first be answered; which of the two imposes the undue burden? It is to be noted that both in the Watson case and the case at bar the employees involved were those hired and residing in a state other than Arizona, and therefore we choose to adhere to our holding in the Watson case, that the application of our workmen's compensation laws under these facts would constitute an undue burden upon interstate commerce. A finding that the undue burden is imposed by California laws would be based on the view

that the situs of the accident is of such importance that Arizona may impose its own laws, but the predicament of the interstate employer is then obvious. He cannot anticipate where accidents may occur to his employees, and to protect himself must conform to the workmen's compensation laws of all states in which his employees work. In short, the multiple premiums we find unduly burdensome would again be required.

Moreover, by adopting this view, which we decline to do, consistency would require us to say that when an employee hired in Arizona engages in interstate commerce and suffers injury in another state, application of our workmen's compensation laws would impose the undue burden; therefore, the extraterritorial coverage given such employees hired in Arizona would be eliminated.

Petitioner contends that the undue burden we find in requiring an interstate employer to make two or more premium payments for the same protection could be avoided if we would apportion our premiums. Under this theory, if an employee divides his labor equally between this and another state, the premiums would be placed upon only half of his total wages since only half the risk of injury occurs here. Beyond the territorial limits of the state the application of our workmen's compensation laws would cease entirely and no double protection would be imposed by our laws.

In addition to the fact that we find no authority in our statute upon which apportionment could be made, this theory would lead to an inequitable result. Under such a view an employee, whether hired in Arizona or not, dividing his labors equally between this state and another in interstate commerce, could expect only approximately half the award he would receive in the event of his injury or death if not in interstate commerce. We cannot ignore this consequence and see no basis in reason or law compelling us to adopt a view which forces such employees to absorb the financial burden of receiving only half the award benefits to which their accidents would normally entitle them.

This result is due to the interconnection of the premium assessed, the wage base and the fact that accident awards relate to both. See Brisendine v. Skouseen Bros., 1936, 48 Ariz. 416, 62 P.2d 326, 112 A.L.R. 1092; Gene Autry Productions, Inc., v. Industrial Commission, 1948, 67 Ariz. 290, 195 P.2d 143. If this state could only assess premiums upon that part of the employee's income which is attributable to his work in Arizona, then in the event of an injury his average monthly wage base could only be computed on the same amount. Premiums could not be assessed on *part* of his income and the award on *all* of his income; such a procedure would soon impair the public fund and contravene Section 56–923, A.C.A. 1939, and our case of Gene Autry Productions, Inc., v. Industrial Commission, supra.

Our case of Faulkner v. Industrial Commission, 1950, 71 Ariz. 76, 223 P.2d 905, 906, illustrates the consequences of adopting petitioner's view. In that case the employee worked nights at a race-course, receiving $10 a night. While his services were covered by the workmen's compensation laws they were required only a few nights a month. During the day the employee worked for the Veterans' Administration where he received $300 a month. His employment with the Veterans' Administration was not subject to our workmen's compensation laws. On his first night at the race-course he was injured. The question was whether his income from the Veterans' Administration should be included in computing his wage base upon which his award would rest, or if only the amount he received from the race-course could be considered. We held that the income received from the Veterans' Administration, which was not subject to our workmen's compensation laws, could not be included and observed:

"In this case the Veterans Administration was not covered nor subject to coverage and of course paid no premiums to the Commission on the wages paid petitioner * * * it is only reasonable that the rule of liberality contemplates that premiums be paid to the Commission for the benefit of its insurance fund based on the amount of wages of the injured employee upon which the Commission establishes its awards. * * * In this case the Commission would be derelict in its duty if it paid compensation to petitioner on the basis of his loss of earning capacity by including his earning power with an employee who paid no premiums on its wages to petitioner and who was neither covered nor could be covered by a policy with the Commission."

See also Walton v. Electric Service Co., 1926, 121 Kan. 480, 247 P. 846.

While the Faulkner case could be distinguished from the situation contemplated by petitioner in that the interstate employee would continue the same work for the same employer, the inability of our workmen's compensation laws to assess premiums or award compensation for the activities of the employee in another state is obvious if interstate commerce is not to be unduly burdened. It is this feature which would require the total wages of such an employee to be divided and his benefits concomitantly less, even if he were hired and injured in this state.

■ We decline to accept petitioners' view. Section 56–923, A.C.A.1939, indicates that the application of our workmen's compensation laws is not to be limited to only those injuries occurring within the state. The legislature specifically intended extraterritorial coverage for employees hired in this state. Presumably employees hired in Arizona are citizens of this state

and entitled to the benefits of Arizona law when their employment takes them into another state. We see no reason to contravene this legislative intent by adopting petitioner's theory especially since this would require such employees to receive much less than the legislature intended as compensation for industrial accidents.

Petitioner is correct in his assertion that we cannot guarantee that compensation will be awarded on the merits of the claim in California. But our inability to control other states does not justify our ignoring the consequences of our internal laws which substantially affect interstate commerce; the commerce clause would otherwise be meaningless.

The award is affirmed.

UDALL and WINDES, JJ., concurring.

PHELPS, Justice (specially concurring).

I concur in the result reached by the majority opinion but disagree with the conclusion reached by the court that Collins was "regularly employed" in Arizona as defined by the provisions of section 56–928, A.C.A.1939. See Industrial Commission v. Watson Bros. Transp. Co., 75 Ariz. 357, 256 P.2d 730.

It seems perfectly clear to me that the language employed by the legislature contemplates that the contract of employment must have been made in Arizona. Under the rule laid down in the majority opinion, if Collins, employed in California, had been working only on what is known as the "extra list", that is, when there happened to be work available for him which only occurred five, six or seven times during the course of a year, and on those occasions drove through the state of Arizona and was injured while within the borders of the state, his claim is compensable except for the fact that it constitutes a burden upon Interstate Commerce.

There is a possibility that a case could arise under such circumstances where there would not be a burden upon Interstate Commerce.

STRUCKMEYER, Justice (dissenting).

I agree with the majority of this court in their conclusion that the decedent was regularly employed in the state of Arizona and concur that Industrial Commission v. Watson Bros. Transp. Co., 75 Ariz. 357, 256 P.2d 730, be overruled as to that portion of the opinion which places a contrary interpretation upon the phrase "regularly employed". However, I cannot agree with the conclusion of the majority that the Arizona Industrial Commission is without jurisdiction to award compensation to the dependents of Adolphus Henry Collins.

Deceased was employed by respondent-employer, American Buslines, Inc., as a bus driver on a run from Los Angeles, California, to Phoenix, Arizona, and return. While driving a bus in the regular course of employment he was killed in an accident occurring in Arizona. An employee, "regu-

larly employed" in Arizona, is compensated by the Arizona law for injuries incurred in the course of his employment; his dependents are compensated in the event of his death. Seemingly in California, if California is the place of employment, an injured employee or his dependents are compensated for injuries or death occurring both inside and outside of the state. Thus the Collins dependents, being covered by the laws of both states, would ordinarily be able to recover compensation in either.

That petitioner has very substantial rights of which she is deprived by the decision in this case becomes apparent in the light of certain additional facts. Petitioner's claim for compensation filed with the Industrial Commission discloses that decedent's average monthly wage was approximately $700 and that he left surviving in addition to petitioner, as widow, a child of the approximate age of one month. By Section 56–953, A.C.A.1939, amended by laws of 1954, petitioner as surviving widow is entitled to receive thirty-five per cent of decedent's average monthly wage until death or remarriage, and the child an additional fifteen per cent until such child reaches the age of eighteen years. Fifty per cent of decedent's average monthly wage is $350 a month. Under the laws of the state of California the maximum that petitioner and surviving child can receive, assuming they receive the maximum, is $30 per week for 240 weeks, 2 Larson, Workmen's Compensation, Table 15, page 546. The difference

between what the laws of the state of Arizona and the laws of the state of California give to petitioner and her child, if extended to the child's eighteenth birthday, is nearly $70,000.

This court held in Industrial Commission v. Watson Bros. Transp. Co., supra, hereinafter referred to as the Watson Bros. case, that if an employer paid a premium under the law of another state to insure employees engaged exclusively in interstate commerce, it would unduly burden such commerce to permit the extraction of a second premium in this state to cover the same employees for the risks of the same trips. It was assumed without being stated or discussed that Arizona in seeking to collect premiums for its state compensation fund imposed the undue burden upon interstate commerce. That assumption is adhered to by the majority of the court in arriving at a decision in this case. Since it is this basic assumption on which the decisions in both cases rest, it deserves a somewhat extended analysis.

If the Workmen's Compensation Acts of neither the states of California nor Arizona covered employees engaged in interstate commerce, no premium would be extracted so that obviously there would be no burden on interstate commerce. If the Workmen's Compensation Act of either state—and not the other—covered employees engaged in interstate commerce, the extraction of a premium by the law of such state would not unduly burden interstate

commerce. Hall v. Industrial Commission, 131 Ohio St. 416, 3 N.E.2d 367. If the Workmen's Compensation Acts of both states afforded coverage to employees engaged in interstate commerce and if both sought to extract a premium for such coverage wherever the employee traveled in interstate commerce, the employer would be compelled by the conjoined effect of the two state laws to pay a double or multiple premium for coverage of the same risk.[1] If the employer is *unable to escape the payment of such premium,* either in one state or the other, an undue burden is imposed upon interstate commerce. In order to avoid this undue burden on interstate commerce either it must be held that both states impose the undue burden or that one but not the other unduly burdens interstate commerce. To hold that both states impose the burden leads to the undesirable result that employees engaged exclusively in interstate commerce are without coverage of any kind. The problem is therefore resolved to the determination of which state's laws should be given effect for if one has a greater or superior right to the enforcement of its Workmen's Compensation Act, then it is the other which imposes the burden.

It is my opinion that where as in this case the deceased was regularly employed in Arizona and the accident occurred in Arizona and the laws of the state of Arizona specifically provide compensation, it ought not to be held that the state of Arizona is unable to, does not have the jurisdiction to award compensation, for the result is to hold that the constitution and the laws of the state of Arizona in Arizona become and are subordinate to the laws of the state of California. The laws of the state of Arizona operating within the territorial limits of Arizona should be held to be paramount and superior to the laws of the state of California having extra-territorial effect. Clearly the decision in this case, having the opposite result, abdicates a portion of the sovereignty of the State to the legislature of another state and in so doing must have disregarded sound legal principles which ought to control its disposition.

The constitution of this state unequivocally demands the payment of compensation to the deceased's dependents:

"The legislature shall enact a Workmen's Compensation Law applicable to workmen engaged in manual or mechanical labor * * * by which compensation *shall be required to be paid* to any such workman in case of his injury and to his dependents * * in case of his death, * * *". (Emphasis supplied.) Article 18, Section 8, Constitution of Arizona.

1. I have used the phrases "double premiums" and "multiple premiums" as meaning two or more premiums all sufficiently large to afford compensation for the risk of the entire trip.

There are no conditions attached to this constitutional mandate. The compensation *must be paid* to the employees designated by the legislature. That designation is equally explicit and mandatory:

"Every employee,[2] hereinbefore designated, who is injured, and the dependents of every such employee who is killed, by accident arising out of and in the course of his employment, wheresoever such injury has occurred, unless purposely self-inflicted, shall be entitled to receive, *and shall be paid* such compensation for loss sustained on account of such injury or death, and such medical, nurse and hospital services and medicines, and such amount of funeral expenses, in case of death, as are herein provided." (Emphasis supplied.) Section 56–931, A.C.A.1939.

The compulsory and mandatory nature of the constitution and implementing statutes has been recognized by this court in positive and unequivocal language:

" * * * This act, so far at least as the employer is concerned, is compulsory in its nature; he has no option as to whether he shall accept or reject

it, and the whole language both of the constitutional amendment authorizing it and of the act itself shows clearly that they were based, * * * upon the inherent right of the state, recognized by the Supreme Court of the United States in the cases above cited, by virtue of its police power to establish certain rules regulating the status of employer and employee. We therefore hold that the present Arizona Workmen's Compensation Act is neither elective nor contractual in its nature, but, on the contrary, that it rests upon the police power to regulate the status of employer and employee within the state of Arizona, and that no contract, express or implied, made within or without the state of Arizona, unless expressly so authorized by our law, can of itself affect the rights and duties of such status. It is governed, so far as this subject is concerned, solely by the provisions of the Arizona statutes, and nothing else. *The right of Goodson to recover compensation, so far as the Arizona tribunals are concerned, therefore, was governed by the Workmen's Compensation Act of Ari-*

---

2. It has been assumed by counsel throughout that respondent-employer, American Buslines, Inc., is an employer whose employees are subject to the Workmen's Compensation Act of this state:
"Employers Subject to Law. (a) Employers subject to the provisions of this article are: 1. the state, 2. each county, city, town, municipal corporation, and school district, and, 3. every person who has in his employ three or more workmen or operatives regularly employed in the same business or establishment, under contract of hire, except agricultural workers not employed in the use of machinery, and domestic servants; * * *". Section 56–928, A.C.A. 1939, as amended by Laws of 1945, Chapter 33, Section 1.

*zona, and the California statute would apply only in so far as the Arizona statute expressly allowed it to do so."* (Emphasis supplied.) Ocean Accident and Guarantee Corporation v. Industrial Commission, 32 Ariz. 275, 282, 257 P. 644, 646.

Since, by the explicit language of the constitution, the statute and prior judicial construction, it cannot be denied that petitioner is entitled to compensation in Arizona for the death of her husband, it would seem to follow logically that the Industrial Commission of this state has jurisdiction to award such compensation and it must be awarded unless the state of Arizona or its laws be held subordinated to the state of California or its laws within the territorial borders of Arizona. Such a result is contrary to the public policy of this state and conflicts with accepted judicial construction. The doctrine of comity by which foreign laws are given effect yields to the positive law of the forum where the governmental interest of the forum is superior to the interests of the foreign jurisdiction.

"* * * A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own. Unless by force of that clause a greater effect is thus to be given to a state statute abroad than the clause permits it to have at home, it is unavoidable that this Court determine for itself the extent to which the statute of one state may qualify or deny rights asserted under the statute of another. [Citing cases.]

"The necessity is not any the less whether the statute and policy of the forum is set up as a defense to a suit brought under the foreign statute or the foreign statute is set up as a defense to a suit or proceedings under the local statute. In either case, the conflict is the same. In each, rights claimed under one statute prevail only by denying effect to the other. In both the conflict is to be resolved, not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests, of each jurisdiction, and turning the scale of decision according to their weight.

"The enactment of the present statute of California was within state power and infringes no constitutional provision. Prima facie every state is entitled to enforce in its own courts its own statutes, lawfully enacted. One who challenges that right, because of the force given to a conflicting statute of another state by the full faith and credit clause, assumes the burden of showing, upon some rational basis,

that of the conflicting interests involved those of the foreign state are superior to those of the forum. * * " Alaska Packers Association v. Industrial Accident Commission, 294 U.S. 532, 55 S.Ct. 518, 523, 79 L.Ed. 1044.

And see Buckingham Transp. Co. v. Industrial Commission, 93 Utah 342, 72 P.2d 1077.

The conflict of laws is to be resolved in favor of the state where the injury occurs:

"* * * Under these circumstances, the governmental policy of California weighs more heavily in the scale of decision than the law of Massachusetts, and the conflict in laws must be resolved in favor of the state where the injury occurred." Pacific Employers Insurance Co. v. Industrial Accident Commission, 10 Cal.2d 567, 75 P.2d 1058, 1063;

affirmed in the Supreme Court of the United States:

"Full faith and credit does not here enable one state to legislate for the other or to project its laws across state lines so as to preclude the other from prescribing for itself the legal consequences of acts within it." Pacific Employers Insurance Co. v. Industrial Accident Commission, 306 U.S. 493, 59 S.Ct. 629, 634, 83 L.Ed. 940;

and is in accord with the experts in the field of workmen's compensation:

"In short, so long as there are conflicting but real governmental interests in two jurisdictions, the worker ordinarily *has his choice of collection* in either the place of hire or place of injury or place of business localization. This is a valuable right, as in one state the medical rights might be limited to $400 and his compensation rights to $5,000, whereas in the other, medical bills and compensation might be unlimited and could amount to over $15,-000 each. The employee's or dependent's rights, if based upon a real interest, depend on the law of the forum which he voluntarily chooses. The full faith and credit clause of the federal constitution is usually held not to be a bar to the employee's choice or election so long as it is obnoxious to the law of the forum to refuse him the local remedy or to refer him to the other state." Horovitz, Injury and Death under Workmen's Compensation Laws, p. 39.

"* * * The view that, whatever other arrangements it may make about applicability, each state should unreservedly take responsibility for injuries within its borders rests not upon any survival of delictual conflicts rules but on simple statutory construction, on the unavoidable interest of the state in an injury which may affect its own citizens more than those of any other state, and on the desirability of providing a backstop liability to which claimant can turn when he finds himself on the wrong side of all other extraterri-

torial rules." 2 Larson, Workmen's Compensation, 385, Sec. 87.25.

Not only does the public policy of this state. require that a workman be compensated for injuries or that his dependents be compensated in case of his death, but it requires that the compensation be *in the manner and in the amount* as the laws of this state provide. Anything less or different is not only in derogation of and contrary to the avowed general welfare of this sovereignty but denies to an injured employee or his dependents, as the case may be, the equal protection of laws required by the constitution of this state, Article 2, Section 13, and the constitution of the United States.

"The equal protection clauses of the 14th Amendment and the state constitution have for all practical purposes the same. effect. They constitute a guaranty that all persons subject to state legislation shall be treated alike under similar circumstances and conditions in the privileges conferred and liabilities imposed." Valley National Bank of Phoenix v. Glover, 62 Ariz. 538, 554, 159 P.2d 292, 299.

"The equal protection of the laws is 'a pledge of the protection of equal laws'. Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070, 30 L.Ed. 220 [226]. Manifestly, the obligation of the State to give the protection of equal laws can be performed only where its laws operate, that is, within its own jurisdiction. It is there that the equality of legal right must be maintained. That obligation is imposed by the Constitution upon the states severally as governmental entities,— each responsible for its own laws establishing the rights and duties of persons within its borders. It is an obligation the burden of which cannot be cast by one State upon another, and no State can be excused from performance by what another State may do or fail to do. That separate responsibility of each State within its own sphere is of the essence of statehood maintained under our dual system. It seems to be implicit in respondents' argument that if other States did not provide courses for legal education, it would nevertheless be the constitutional duty of Missouri when it supplied such courses for white students to make equivalent provision for negroes. But that plain duty would exist because it rested upon the State independently of the action of other States. We find it impossible to conclude that what otherwise would be an unconstitutional discrimination, with respect to the legal right to the enjoyment of opportunities within the State, can be justified by requiring resort to opportunities elsewhere. That resort may mitigate the inconvenience of the discrimination but cannot serve to validate it." State of Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 236, 83 L.Ed. 208.

The consequence of the majority holding in both this and the Watson Bros. case leads to the absurd result, in the language of Alaska Packers Association v. Industrial Accident Commission of California, supra, that the statutes of this state cannot be enforced in this state or in the courts of this state because of an obligation claimed to be incurred under the statutes of the state of California. The people of Arizona acting through their legislature, so long as these decisions stand unreversed, are barred from the exercise of the right inherent in every sovereignty—to pass laws for the internal regulation and government of the state necessary to preserve the public order and promote the general welfare. Workmen within Arizona engaged in interstate commerce become victims of the whims and vagaries of the various legislatures of the remaining forty-seven states depending upon where the employer procures his insurance. And: ·

"* * *· As the Pacific Employers case held, the physical presence of the injured man within the state must concern the state. His medical and hospital bills are owed to local residents, who should not be required to go to foreign states for payment; the witnesses to the accident are within the state, and most of the best evidence bearing on the circumstances of the injury; the state's safety laws and standards may be involved; and, as the Alaska Packers case stressed, the mere presence of a disabled and destitute human being within a state's borders is a social problem of concern to that state since the man may become a public charge if not provided for by compensation law." 2 Larson, Workmen's Compensation, 382, Section 87.23.

It therefore appears that the assumption in the Watson Bros. case that Arizona would unduly burden interstate commerce in enforcing its Workmen's Compensation Act by requiring the payment of premiums to the state compensation fund is unsound. That unsoundness has contaminated the opinion in this case leading to the complete denial of petitioner's rights as expressed in the constitution and laws of this state. A decision so unsound in principle and so harsh and unjust in result should be positively and unambiguously reversed.

Now, I have said that it is my opinion that the Watson Bros. case should be reversed but since the principle established is being adhered to as the law of this jurisdiction, a recognition of the limitations of the holding therein will do much to limit the pernicious effect. The Watson Bros. case was an action to restrain the collection of premiums to be paid to the state compensation fund. The premiums sought to be collected were admittedly in an amount sufficient to insure the employees of Watson Bros. Transportation Co. for the hazards of the entire trip both within and without the state. The court did not hold that the extraction of a lesser premium in

an amount sufficient to compensate an injured workman or his dependents for the difference between what the laws of the state of Arizona allowed and the laws of the foreign jurisdiction allowed constituted an undue burden on interstate commerce, and did not hold that an employer was not compelled to otherwise comply with the Workmen's Compensation Act of this state under circumstances where a double premium was not imposed. If these limitations are recognized, this court can give full effect to the statutes of the state of Arizona.

The purpose of both Workmen's Compensation Acts can be fully carried out if an employer doing business in the state of Arizona is required to carry that amount of insurance sufficient to compensate his employees for the difference, if any, between what the foreign state and what the state of Arizona will pay. The employee in the case of his injury or his dependents in case of his death can obtain compensation in the place of his employment and Arizona can pay the difference between the two states, if any. It is now accepted in leading jurisdictions that an award in one state does not bar a further and subsequent award in the second based on the difference in the amounts allowed in the two states. Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140, 169 A.L.R. 1179; Industrial Indemnity Exchange v. Industrial Accident Commission, 80 Cal.App.2d 480, 182 P.2d 309; Cline v. Byrne Doors, Inc., 324 Mich. 540, 37 N.W.

2d 630, 8 A.L.R.2d 617; Spietz v. Industrial Commission, 251 Wis. 168, 28 N.W.2d 354; Sorenson v. Standard Construction Co., Inc., 238 Minn. 68, 55 N.W.2d 630; Cook v. Minneapolis Bridge Construction Co., 231 Minn. 433, 43 N.W.2d 792; Baduski v. S. Gumpert Co., Inc., 277 App.Div. 591, 102 N.Y.S.2d 297.

"Award already had under the Workmen's Compensation Act of another state will not bar a proceeding under an applicable Act, unless the Act where the award was made was designed to preclude the recovery of an award under any other Act, but the amount paid on a prior award in another state will be credited on the second award." Restatement of the Law, Conflict of Laws, 1948 Supplement, Section 403.

By the recognition of this principle an employee regularly employed in Arizona engaged in interstate commerce will be in the position of being assured that the state of Arizona is providing a "backstop" liability to which he may turn in the event he finds himself on the wrong side of extra-territorial rules. This state will have unreservedly taken on its responsibility for injuries which affect the general welfare of the people within the borders of the state and the employees will be compensated, if not in accord with the spirit, at least with the general tenor of the law. This does not shift the burden of employees injured in Arizona to compensation funds of other states for the reason that other states hav-

ing laws extra-territorial in coverage must have established a rate consistent with the hazards involved. The premium paid in the foreign jurisdiction is presumptively based upon the statutory compensation allowed there and the premium in this jurisdiction need only be that which is necessary to provide compensation for the difference. The payment of the additional premium in Arizona by an employer necessary to compensate for the additional amount allowed is not a double premium for the reason that the employer is not insuring against the same loss in two states.

There is yet another and greater reason why the majority err in denying the Industrial Commission the jurisdiction to enter an award in petitioner's favor under the circumstances of this case. By statute, Section 56-932, A.C.A.1939, it is provided in part as follows:

"Securing Compensation—Alternative Methods—Regulations.—Employers, but not including the state or its legal subdivisions, shall secure compensation to their employees in one of the following ways:

"1. By insuring and keeping insured the payment of such compensation with the state compensation fund;

"2. By insuring and keeping insured the payment of such compensation, with a corporation or association authorized to transact the business of workmen's compensation insurance in the state * * *;

"3. By furnishing to the commission satisfactory proof of financial ability to pay direct the compensation in the amount and manner and when due as herein provided, * * *"

The statute gives an employer the choice of three methods to insure that his employees are compensated. He may insure with the state compensation fund, insure with a private insurance carrier or become a self-insurer. He is not compelled to adopt any particular method but is permitted to choose the method which is least burdensome. The choice allowed by the statute removes the claimed undue burden on interstate commerce because it provides a means by which an employer can avoid the payment of a double premium.

By the provisions of sub-section two an employer may select an insurance carrier qualified to do business in both Arizona and California, thereby insuring against the risks occasioned by the employment in both states. While it is undoubtedly true that a private insurance carrier would require the payment of a higher premium to insure against the risks of doing business in Arizona because the statutes of this state afford to the employee greater compensation than do the statutes of the state of California, interstate commerce would not thereby be unduly burdened. It is not every burden which is an undue burden.

"Protection against accidents, as against crime, presents ordinarily a local problem. Regulation to ensure

safety is an exercise of the police power. It is primarily a state function, whether the locus be private property or the public highways. Congress has not dealt with the subject. Hence, even where the motorcars are used exclusively in interstate commerce, a state may freely exact registration of the vehicle and an operator's license, (citing cases); may require the appointment of an agent upon whom process can be served in an action arising out of operation of the vehicle within the state, (citing cases); and may require carriers to file contracts providing adequate insurance for the payment of judgments recovered for certain injuries resulting from their operations, (citing cases). The State may exclude from the public highways vehicles engaged exclusively in interstate commerce, if of a size deemed dangerous to the public safety, (citing cases). Safety may require that no additional vehicle be admitted to the highway. The Commerce Clause is not violated by denial of the certificate to the appellant, if upon adequate evidence denial is deemed necessary to promote the public safety. * * *." Bradley v. Public Utilities Commission, 289 U.S. 92, 53 S.Ct. 577, 578, 77 L.Ed. 1053.

Similarly by the provisions of sub-section three an employer as a self-insurer can wholly avoid the payment of any premium.

It should be pointed out again that the holding of the Watson Bros. case was limited to the facts presented in that case, namely, that an attempt was being made to collect a premium for the state compensation fund. That case did not consider the question of whether an interstate employer could disregard completely all the other applicable provisions of the Workmen's Compensation Act of this state. The majority opinion, in denying petitioner an award, permits an employer to escape all responsibility under the Workmen's Compensation Act in doing business in this state and the very evil which was so clearly foreseen by this court shortly after the adoption of the Act has come to pass:

"* * * If we accept the construction placed by petitioner upon the law, it will be entirely possible for large employers of labor to select a state where the benefits of the Compensation Law are extremely small, and by making their contracts of employment in that state, reduce to a great extent the benefits which the public policy of this state has declared should accrue to the injured workman. We do not think a construction making such a thing even possible is one which should be adopted unless it is unavoidable. The rule which we have laid down will make benefits for injuries of the same kind arising under the same circumstances uniform and certain, and insure that all persons holding the status of employee

within this state will be insured the protection of its beneficent laws." Ocean Accident and Guarantee Corporation v. Industrial Commission, supra [32 Ariz. 275, 257 P. 647].

For the foregoing reasons and each of them I dissent.