455 P.2d 288

**Johnny L. AGEE, Sr., Chester Bailey, Petitioners,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent;**

**RUAN TRANSPORT CORPORATION, Real Party in Interest.**

**Nos. I CA–IC 231, I CA–IC 232.**

Court of Appeals of Arizona.

June 3, 1969.

Rehearing Denied July 28, 1969.
Review Denied Sept. 30, 1969.

Chris T. Johnson, Phoenix, for petitioners.

Jennings, Strouss, Salmon & Trask, by William R. Jones, Jr., and Ronald H. Moore, Phoenix, for Ruan Transp. Corp.

Robert D. Steckner, Phoenix, Chief Counsel, by Courtney L. Varner, Phoenix, for The Industrial Commission of Arizona.

**2**

STEVENS, Judge.

On 16 November, 1965 Bailey was driving a Ruan truck in Arizona en route from Denver, Colorado to Blythe, California when there was an accident. His fellow employee, Agee, was asleep in the sleeper compartment of the truck at the time of the accident. Both men were in the course and scope of their employment. Both men were injured. Agee and Bailey were both residents of the State of Colorado and their respective employment contracts with Ruan were executed in the State of Colorado. The trucking run in reference to which these men were in Arizona was an interstate run not on a regular schedule. The run was classified as an irregular run. Ruan had a number of runs using the highways of the State of Arizona in the year 1965 some of which merely passed through Arizona on the way from Colorado to California and other runs were to points in Arizona for the purpose of either delivering or picking up material for interstate shipment. The Ruan report to The Arizona Industrial Commission indicates that in the year 1965 there were a total of 29 runs using the Arizona highways of which number 20 were from Colorado to California and 9 were for the delivery of material or the picking up of material in Arizona.

Three questions are presented to this Court.

First: Was Ruan exempt from the requirement of carrying Arizona workmen's compensation insurance because to compel Ruan to carry such compensation insurance would constitute a burden on interstate commerce?

Second: In the event that the first question is answered in the negative, did the type of business in which Ruan was engaged including the use of Arizona highways require that Ruan carry Arizona workmen's compensation for its employees, or to state the question in another way did The Industrial Commission of Arizona have jurisdiction in relation to the accident whch occurred within the State of Arizona? and

Third: Was the lump sum settlement which each of the injured workmen received in Colorado res judicata which precluded their successful processing of their claims before The Industrial Commission of Arizona?

Each of the claimants received some benefits under the Colorado law from the Ruan insurance carrier, these benefits having commenced before they filed their respective claims for compensation with The Arizona Industrial Commission. Each filed his Arizona claim within one year from the date of the accident. The claims were timely filed in Arizona and the injuries were sustained in the course and scope of their employment.

In connection with each claim, The Industrial Commission entered its decision rejecting the same by reason of lack of jurisdiction. The determination of lack of jurisdiction was based upon the following findings of fact:

"1. That the claimant was not 'regularly employed' in the State of Arizona at the time of the injury.

"2. That the defendant employer was not required to be insured under the State of Arizona Workmen's Compensation Act at the time of the injury.

"3. Therefore The Industrial Commission of Arizona is without jurisdiction to award benefits."

INTERSTATE COMMERCE

■ In the case of Industrial Commission v. Watson Bros. Transp. Co., 75 Ariz. 357, 256 P.2d 730 (1953) and in the case of Collins v. American Buslines, Inc., 79 Ariz. 220, 286 P.2d 214 (1955) the Arizona

Supreme Court held that to require an employer. in the position of Ruan to carry Arizona workmen's compensation would cast an undue burden on interstate commerce. The *Collins* case was appealed to the Supreme Court of The United States which Court in Collins v. American Bus-lines, 350 U.S. 528, 76 S.Ct. 582, 100 L.Ed. 672 (1956) reversed the Arizona holding as to interstate commerce and held that Arizona was permitted to require work-men's compensation coverage without cast-ing an undue burden on interstate com-merce. The first question proposed in the case now under consideration is an-swered by holding that the interstate com-merce nature of the Ruan business would not exempt Ruan from carrying Arizona Workmen's Compensation coverage. .

## DID RUAN'S BUSINESS OPERATION . REQUIRE ARIZONA WORKMEN'S COMPENSATION COVERAGE

■ The Supreme Court of the United States in *Collins* made it clear that states can require interstate truckers to carry workmen's compensation in the sev-eral states in which they operate. The question we now consider is whether Ari-zona statutes required Ruan to carry work-men's compensation or whether the statutes exempt Ruan from this requirement.

In our opinion it is necessary to consider the following portions of the Arizona Re-vised Statutes

§ 23–902, subsec. A states, in part: "Employers subject to chapter

"A. Employers subject to the provisions of this chapter are * * * every per-son who has in his employ three or more workmen or operatives regularly em-ployed in the same business or establish-ment under contract of hire, * * *. For the purposes of this section 'regular-ly employed' includes all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or oc-cupation of an employer."

. "23–903. Application of chapter to per-sons engaged in interstate commerce; limitation

"The provisions of this chapter shall apply to employers and their employees engaged in intrastate and also in inter-state and foreign commerce for whom a rule of liability or method of compen-sation has been or may be established by the United States only to the extent that their mutual connection with intra-state work is clearly separate and distin-guishable from interstate or foreign com-merce."

"§ 23–904. Effect of injury without the state; right to compensation of out-of-state employee in-jured within state

"A. If a workman who has been hired or is regularly employed in this state receives a personal injury by accident arising out of and in the course of such employment, he shall be entitled to com-pensation according to the law of this state even though the injury was re-ceived without the state.

"B. If a workman who has been hired without this state is injured while en-gaged in his employer's business, and is entitled to compensation for the in-jury under the law of the state where he was hired, he may enforce against his employer his rights in this state if they are such that they can reasonably be determined and dealt with by the com-mission and the courts in this state."

No statute enacted by Congress which preempts the field as to interstate commerce has been called to our attention. We are of the opinion that A.R.S. § 23–903 has no application to the problem which faces us.

4

In The Arizona Industrial Commission file Ruan introduced a record of 29 separate occasions on which its trucks used Arizona highways in 1965; the exact destination, the number of trucks and other information of this type was not furnished. Twenty of these trips were from Colorado to California. Nine of these trips were from Colorado to points in Arizona. Each truck had two drivers. There was evidence that on at least one occasion in March 1965 there was a three-truck convoy to Tucson, Arizona. The Ruan record did not disclose whether there may have been dates on which two or more trucks on separate runs and not in convoy may have been in Arizona at the same time. The drivers were not always the same. The pairing of the two drivers for a single trip was not always the same.

■ The injury having occurred in Arizona while the injured workmen were in the scope and course of their employment the critical matter to be resolved is whether the term "regularly employed" as that term is used in A.R.S. § 23–902, subsec. A refers to the employment practices of Ruan in relation to the number of persons Ruan regularly employs in Arizona and elsewhere in the conduct of its business or whether the term "regularly employed" refers only to the injured workman and to the regularity with which that workman is physically present in Arizona in the performance of his employee responsibilities. There is no question that Ruan in its overall trucking business operation regularly employs "three or more workmen."

An employer who has employees working in Arizona is required to have Arizona workmen's compensation insurance if he "has in his employ three or more workmen or operatives regularly employed in the same business or establishment under contract of hire". There are no geographical limits imposed by the statute as to the states wherein the employees fulfill their employment duties. The sentence "for the purposes of this section 'regularly employed' includes all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or occupation of an employer" likewise contains no geographical limitations. The phrase "or for only a portion of the year" does not refer to the individual employee but refers to the manner in which the employer does business. In other words, if the employer has three or more employees on a twelve-month basis he must be insured. If the employer has a seasonal business and operates only three months out of the year and during that three-month period has three or more employees he must be insured.

We hold that Ruan regularly or customarily employing a combined total of employees which meets the "three or more" test must carry workmen's compensation insurance for those employees who are performing their employment duties in Arizona, while they are performing those duties, even though the individual employee may be one who is engaged in his sole trip into Arizona. To our minds it is unrealistic to say that an employee with an out-of-state employment contract must spend a fixed percentage of his time in Arizona before he is protected. In *Collins*, the employee spent an estimated forty percent of his time in Arizona. The Arizona Supreme Court did not say that this was the magic percentage number. Under our construction of the statute we believe that an employee need not spend any fixed percentage of his time in the State of Arizona to entitle him to the benefits of our Act.

Although the fact situations in the following cases differ from the one now under consideration it is our opinion that the cases hereinafter cited support the view that it is the total number of employees

in the employer's business operation regardless of the geographical location of the employees which controls. In other words, the minimum number of employees specified in the Arizona statutes need not be working in Arizona. The cases to which we refer are: Baldwin-Hill Company v. Lochner, Okl., 359 P.2d 228 (1961); Nowlin v. Lee, Miss., 203 So.2d 493 (1967); and Mobile Elevator Co. v. White, Fla., 39 So.2d 799 (1949).

Earlier Arizona cases seem to imply that the status of the individual employee in relation to whether he was regularly employed was controlling and yet there is no question as to the requirement for workmen's compensation coverage of a casual employee of an Arizona business which otherwise meets the "three or more workmen" test.

The case of Ocean Accident & Guarantee Corp. v. Industrial Commission, 32 Ariz. 275, 257 P. 644 (1927) set forth certain tests which were disapproved by the Supreme Court in the opinion in Industrial Commission v. Watson Bros. Transp. Co., 75 Ariz. 357, 256 P.2d 730 (1953). The *Watson Bros.* case centered on the status of the injured workman as to whether he was regularly employed in Arizona. We thereafter have the Arizona decision in the *Collins* case heretofore cited. As the *Watson Bros.* case was critical of the Ocean Accident case, *Collins* was critical of portions of the *Watson Bros.* decision. Again the status of the injured workman as to whether he was regularly employed was a critical factor in the opinion in the *Collins* case. In *Collins* the Arizona Supreme Court stated (79 Ariz. at 223, 286 P.2d at 216):

"* * * we hesitate to construe our workmen's compensation laws in a manner as to exclude employees injured in Arizona unless such construction is clearly required by the terms of the statute.

\*      \*      \*      \*      \*      \*

"Ambiguity is insufficient for then the question is to be resolved in favor of the employee rather than against him.

\*      \*      \*      \*      \*      \*

"The statute does not require that an employee hired elsewhere must work exclusively or continuously within this state to be considered regularly employed. A portion of the year is sufficient.

\*      \*      \*      \*      \*      \*

"When killed in Arizona decedent was following a bus schedule which systematically required him to spend approximately forty percent of his working time in this state. Decedent worked 'only a portion of the year' in this state but that is all the statute requires. We find no specific language in our statute indicating that when decedent was killed in Arizona he was not regularly employed within the provisions of Section 56–928(a), supra." (Sec. 56–928 of the A.C.A.1939 is now A.R.S. § 23–902)

In *Collins,* Mr. Justice Struckmeyer wrote a dissenting opinion. It is our view that the progress of Arizona opinions is away from the question of the status of the employee and toward the question of the employer's employment practices.

In our opinion the term "regularly employed" found in A.R.S. § 23–904, subsec. A relates to an employee who was injured outside the state of Arizona and this section permits the application of the Arizona Workmen's Compensation Act if that employee was either "hired * * * in this state" or was "regularly employed in this state." In our opinion A.R.S. § 23–904, subsec. A is not applicable to the facts before us.

In answer to the second question which we suggested in this opinion, we hold that since Ruan was required to have Arizona workmen's compensation coverage for the employees in question The Arizona Industrial Commission did have jurisdiction.

## EFFECT OF LUMP SUM SETTLEMENT

Both men received some money in Colorado from Ruan's insurance carrier. The exact nature of these payments is not set forth in the record, that is to say, we are not informed as to the portion which may have been for medical expenses or the portion which may have been for compensation. Bailey testified in the Arizona hearing. He admitted that a lump sum settlement in excess of three thousand dollars had been paid to him after approval by The Industrial Commission of Colorado. In relation to the settlement, we find the following questions and answers.

"Q. Mr. Bailey, this Award that Mr. Jones referred to from the Industrial Commission of Colorado, did you agree not to file any claim in the State of Arizona?

A. No.

\* \* \* \* \* \*

Q. "Did you agree that this settlement in Colorado would be the complete settlement for your injuries no matter what your final disabilities were?

A. No."

The lump sum award contains the following language:

"In the above entitled cause the Commission, having examined the entire file, finds that a lump sum settlement should be granted for *the purpose contained in claimant's application and for no other purpose.*" (Emphasis supplied).

The "claimant's application" is not in the record before us. The record does not support a plea of res judicata as to Bailey.

At the time of the Arizona hearing Agee had not received a lump sum settlement. A later lump sum settlement in excess of eleven thousand dollars was paid to Agee. The action of The Industrial Commission of Colorado in approving the settlement contains the identical language quoted above in relation to the Bailey settlement and the file in Arizona does not reflect the Agee application for settlement. The record does not support a plea of res judicata as to Agee.

In view of the record before us, we need not interpret the Colorado statutes relative to workmen's compensation. We need not give consideration to the application of the cases of Magnolia Petroleum Co. v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149, 150 A.L.R. 413 (1943) and Industrial Commission of Wisconsin v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140, 169 A.L.R. 1179 (1947). These cases are cited in the Arizona report of the *Collins* decision.

In the *Collins* opinion the Arizona Supreme Court recognized (79 Ariz. at 225, 286 P.2d at 218):

"\* \* \* A first award would be credited to the second and result in only one total compensation."

In his dissent this principle was enlarged by Mr. Justice Struckmeyer as follows: (79 Ariz. at 237, 286 P.2d at 226).

"The purpose of both Workmen's Compensation Acts can be fully carried out if an employer doing business in the state of Arizona is required to carry that amount of insurance sufficient to compensate his employees for the difference, if any, between what the foreign state and what the state of Arizona will pay. The employee in the case of his injury or his dependents in case of his death can obtain compensation in the place of his employment and Arizona can pay the difference between the two states, if any. It is now accepted in leading jurisdictions that an award in one state does not bar a further and subsequent award in the second based on the difference in the amounts allowed in the two states."

The awards are set aside.

DONOFRIO, C. J., and CAMERON, J., concur.