688 P.2d 703

**Susan DiMURO, widow of Louis J. DiMuro, deceased, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**American League of Professional Baseball Clubs, Respondent Employer,**

**Home Insurance Company, Respondent Carrier.**

**No. 1 CA–IC 3054.**

Court of Appeals of Arizona, Division 1, Department C.

July 31, 1984.

Review Denied Sept. 26, 1984.

Tretschok, McNamara & Clymer, P.C. by Patrick R. McNamara, Tucson, for petitioner.

Sandra Day, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Larry L. Smith and W.C. Wahl, Jr., Phoenix, for respondent employer and respondent carrier.

## OPINION

MEYERSON, Judge.

### I. FACTS

This is a special action review of an Industrial Commission (Commission) award dismissing a death benefits claim filed by the wife (petitioner) of the deceased employee. The administrative law judge (judge) dismissed the claim because he concluded that the deceased employee (DiMuro) was not "regularly employed" in Arizona under A.R.S. § 23–904.A. (§ 23–904.A.). For the reasons stated herein we affirm the award.

DiMuro was hired in a state other than Arizona and employed as a professional baseball umpire by the American League of Professional Baseball Clubs (American League). He was fatally injured following a baseball game in Texas on June 7, 1982. Between March 8 and March 21, 1982, he umpired spring training games in Arizona. When the regular season began in April, he worked exclusively outside of Arizona in various cities with major league teams.[1]

DiMuro was an Arizona resident since 1975, and his survivors (a wife and five minor children) are Arizona residents. During the baseball season, he periodically visited his family here; during the off season, he returned to Arizona and worked as

1. During 1982, DiMuro umpired 12 games in Arizona. Excluding post-season games, DiMuro would have worked approximately 170 games outside of Arizona during the regular season.

This case was presented to the Commission on a stipulated statement of facts. The stipulated facts contain no reference to DiMuro's umpiring activity in Arizona for any year other than 1982.

a maître d' at the Tucson National Golf Club.

Based on these facts, the judge determined, as a matter of law, that the Commission had no jurisdiction to hear the claim because DiMuro was not "regularly employed" in this state within the meaning of § 23–904.A. Although the judge did not attempt to define "regularly employed," he rejected the applicability of the statutory definition of this term as found in § 23–902.A.

## II. REGULARLY EMPLOYED

Proper construction of the term "regularly employed" requires an analysis of the statutory framework of workers' compensation as set out in §§ 23–902.A., –904.A., –904.B.[2] These statutes create three distinct situations in which a claimant's protection under Arizona law varies depending on the nature of his employment connections with the state and the location of the injury. *See generally,* 4 A. Larson, *The Law of Workmen's Compensation* §§ 87.-00–.60 (1984) (*Larson*).

■ ■ When the injury occurs in Arizona, § 23–902.A. controls. *See Collins v. American Buslines, Inc.,* 79 Ariz. 220, 286 P.2d 214 (1955), *rev'd on other grounds,* 350 U.S. 528, 76 S.Ct. 582, 100 L.Ed. 672 (1956); *Agee v. Industrial Commission,* 10 Ariz.App. 1, 5, 455 P.2d 288, 292 (1969). This statute provides:

Employers subject to the provisions of this chapter are ... every person who has in his employ any workmen or operatives regularly employed in the same business or establishment under contract of hire, except domestic servants .... For the purposes of this section 'regularly employed' includes all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or occupation of an employer.

The Commission has jurisdiction over the claim of an injured worker for an in-state injury when that claimant works for an employer who regularly employs personnel in Arizona in his usual business. *Agee,* 10 Ariz.App. at 5, 455 P.2d at 292. Thus, for in-state injuries the focus of the inquiry is the statutory liability of the employer.

■ When the injury occurs outside of Arizona, the claimant must meet the statutory criteria of § 23–904.A. to receive benefits under Arizona's workers' compensation laws. This section provides:

If a workman who has been hired or is regularly employed in this state receives a personal injury by accident arising out of and in the course of such employment, he shall be entitled to compensation according to the law of this state even though the injury was received without the state.

To receive benefits under this statute the worker must have been hired here or must be regularly employed here. *Agee,* 10 Ariz. App. at 5, 455 P.2d at 292. To fit within the "regularly employed" category, the claimant must meet a two-prong test to establish a sufficient connection with Arizona. First, the worker must show that he is regularly employed in Arizona. Second, he must establish that the injury arose out of and in the course of his regular employment within Arizona. *See Baker v. Industrial Commission,* 92 Ariz. 198, 201, 375 P.2d 556, 557 (1962).

■ Finally, in cases where the injury occurs out of Arizona and the employee is unable to establish that he was hired here or that the injury occurred within the scope of his regular employment in Arizona, the claimant may still find some protection in § 23–904.B.[3] In this situation, the worker

---

**2.** The interpretation of these statutes has had a tortuous history. *Compare Collins v. American Buslines, Inc.,* 79 Ariz. 220, 286 P.2d 214 (1955), *rev'd on other grounds,* 350 U.S. 528, 76 S.Ct. 582, 100 L.Ed. 672 (1956) *with Industrial Commission v. Watson Bros. Transp. Co.,* 75 Ariz. 357, 256 P.2d 730 (1953) *and Ocean Accident and Guarantee Corp. v. Industrial Commission,* 32 Ariz. 275, 257 P. 644 (1927).

**3.** Section 23–904.B. provides:

If a workman who has been hired without this state is injured while engaged in his employer's business, and is entitled to compensation for the injury under the law of the state

may enforce his rights to compensation under the laws of the state in which he was hired before the Commission and courts of Arizona. In such cases, the claimant's employment relationship is not sufficiently localized in this state to afford him direct benefits under our compensation statutes.

▪ The principal question raised by the parties is whether "regularly employed" in § 23–904.A. means the same as "regularly employed" in § 23–902.A. For several reasons, we believe the terms have different definitions. First, in § 23–902.A., the term is defined "[f]or the purposes of this section." The workers' compensation laws have been re-enacted several times by the legislature since 1925. The retention of this limiting phrase since 1945 indicates legislative intent to restrict the definition in § 23–902.A. to this section alone. Second, the term "regularly employed" in § 23–902.A. has been interpreted to refer to the employer's work force. *Agee*, 10 Ariz.App. at 4, 455 P.2d at 291. In § 23–904.A., "regularly employed" refers to the individual claiming benefits. *Cf. Jordan v. Industrial Commission*, 117 Ariz. 215, 571 P.2d 712 (App.1977).

Lastly, the statutes have different purposes. Section 23–902.A. concerns the employment relationship itself. To obtain the benefit of Arizona's compensation law for in-state injuries, one need not spend any fixed percentage of time in Arizona, but simply must work for an employer who regularly employs workers here. Under § 23–902.A., it is the occurrence of an in-state injury which gives Arizona the primary interest in applying its compensation laws. *Collins v. American Buslines, Inc.*, 79 Ariz. at 223, 286 P.2d at 217.

On the other hand, § 23–904.A. concerns the extra-territorial scope of Arizona's workers' compensation laws. Because the injury does not occur in Arizona, the worker must be hired or regularly employed here. For out-of-state injuries, it is the presence of the employment relationship in Arizona which establishes Arizona's interest for purposes of applying its compensation laws. Because the statutes have different purposes, it would be incongruent to apply the identical definition of the term "regularly employed."

Having determined that "regularly employed" in § 23–904.A. does not have the same meaning as in § 23–902.A., it is next necessary to define it in the context of the facts of this case. The precise issue we must decide is the extent of Arizona employment which must exist before a claimant may seek Arizona benefits for an injury occurring out of this state. Section 23–904.A. establishes two independent bases for coverage. The worker must be hired here *or* regularly employed here. It is the latter term to which we must give meaning.

Although the states vary in their approach to the question of coverage for out-of-state injuries, Larson reports that thirty-two states have adopted the approach recommended by the National Commission on State Workmen's Compensation Laws. 4 *Larson* § 87.12. Under this "formula," out-of-state injury coverage exists whenever either the hiring or *principal localization of the employment* is in the state. *Id.* at § 87.11; *see generally* 4 *Larson* §§ 87.-12–.60; Council of State Governments, *Workmen's Compensation and Rehabilitation Law* § 7(a)(1) and commentary at 97–98 (1965).

▪ Larson concludes that this test is the "most relevant to compensation theory and the least artificial" because the "exist-

---

where he was hired, he may enforce against his employer his rights in this state if they are such that they can reasonably be determined and dealt with by the commission and the courts in this state.

The title to § 23–904.B. reads "right to compensation of out-of-state employee injured within state." This section cannot, however, be read in such fashion because § 23–902.A. covers in-state

injuries for workers who may be hired out-of-state, so long as the employer regularly employs personnel in Arizona. *Collins v. American Buslines, Inc.* We need not decide in this case whether § 23–904.B. would apply in the case of an in-state injury to a worker hired out-of-state where the employer *does not* regularly employ workers in Arizona.

ence of the employer-employee relation within the state gives the state an interest in controlling the incidents of that relation, one of which incidents is the right to receive and the obligation to pay compensation." 4 *Larson* § 87.41. Thus, the place of contract or hiring as well as the situs of regular employment, marks a localization of the employment relation within the state thereby creating a significant state interest in that work relationship sufficient to invoke benefits under the state's compensation statutes. In view of the wide acceptance of the principal localization of the employment test, we hold that the term "regularly employed" in § 23–904.A. requires that the principal localization of the worker's employment must be in Arizona.[4]

■ Under the facts before us, it cannot be said that the principal localization of DiMuro's employment with the American League was Arizona. The only employment relationship DiMuro had with Arizona as a baseball umpire was his participation in twelve Cactus League games. Given the nature of his work as a professional baseball umpire, it can only be concluded that DiMuro's work in Arizona was transitory and quite limited. Other than the Cactus League games in 1982, DiMuro had no other work on behalf of the American League in Arizona. Thus, DiMuro did not have sufficient contacts with Arizona that it could reasonably be concluded that his American League employment was located here.

■ In the case of a transitory employee such as DiMuro, the principal localization of his employment would be in the state of his hiring. *See* 4 *Larson* § 87.42. Admittedly, during 1982, DiMuro worked in Arizona roughly the same amount of time as any other major league city. But because of the transient nature of his employment, the principal focus of his job never shifted from the initial state of hire. More connection to Arizona would have to be shown in order to demonstrate that the focus of his

employment shifted from the hiring state to our state. For example, in *Stapleton v. Travelers Ins. Co.*, 359 So.2d 1051 (La.App. 1978), a dragline operator, a resident of Louisiana, worked two months in Texas, eight months in Mississippi, and three months in Louisiana prior to his injury in Mississippi. The court found that the claimant was paid from Louisiana, filed weekly reports in Louisiana and received his job assignments from that state. The court concluded that the principal localization of the employment was in Louisiana. No comparable factors are found in the case before us.

In *Hollingsworth v. May Trucking*, 59 Or.App. 531, 651 P.2d 188 (1982), an Oregon resident was injured in California while working for an Idaho-based trucking company. Although twenty-five percent of his work was in Oregon, he was dispatched almost equally to Idaho, Washington, California and Utah. The court held that the "time spent driving in Oregon, as compared to other states, was insufficient to raise a presumption that Oregon was claimant's regular base of employment or to render all trips out of Oregon 'temporary.'" 59 Or.App. at 535, 651 P.2d at 190.

A recent Kentucky decision is also informative. Kentucky will apply its workers' compensation law extraterritorially if the claimant's employment is principally localized in the state or if the worker is hired in the state. Ky.Rev.Stat. § 342.670(1) (1983). Principally localized is defined to mean the state where the worker is regularly employed (and where the employer has a place of business) or where the worker is domiciled and spends a substantial amount of his working time. Ky.Rev.Stat. § 342.670(4)(d) (1983). In *Davis v. Wilson*, 619 S.W.2d 709 (Ky.App.1980), the worker operated a mobile car crusher and moved sporadically between Kentucky and Tennessee. A resident of Kentucky, the claimant had worked two weeks in Kentucky and eleven weeks in Tennessee before his

---

**4.** Larson lists Arizona among the states which follow the principal localization approach. 4

*Larson* § 87.11 n. 1.

injury in Tennessee. The court concluded that the claimant did not work regularly in either state and thus under the first definition of principal localization found no coverage. This aspect of the case supports our decision here. But under the second alternative definition of principal localization—domicile plus substantial working time—the court found that twenty percent of his work in Kentucky was substantial. The Kentucky statute, however, gives legal importance to domicile which is not comparable to § 23–904.A. Additionally, the Kentucky statute distinguishes between regular employment and substantial employment; a distinction not found in the Arizona statute.

## III. RESIDENCY

The petitioner next argues that because residency is constitutionally relevant, the Arizona residency of the deceased employee and his survivors must be considered in the application of § 23–904.A. We disagree.

■ This argument confuses federal constitutional limits on the extraterritorial scope of forum compensation law and the actual extraterritorial scope that the forum law permits. Although residency may be a constitutionally permissible criterion for extraterritorial application of forum law, 4 *Larson* § 86.33 (citing *Cardillo v. Liberty Mutual Insurance Co.*, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947)), it is not, however, a criterion under § 23–904.A. To the contrary, this subsection only requires that the worker be hired or regularly employed here. If neither standard is satisfied, Arizona workers' compensation law is inapplicable.

■ Although the "hired" portion of § 23–904.A. is based upon the presumption that a worker hired here is a resident of Arizona, *Collins v. American Buslines, Inc.*, 79 Ariz. at 228, 286 P.2d at 220, the

fact remains that residency is not a factor expressed in the statute. In *Ryan v. Industrial Commission*, 127 Ariz. 607, 623 P.2d 37 (App.1981), an Arizona resident was injured in California and filed a claim for benefits in Arizona. Although the court acknowledged that the purpose of § 23–904.A. was to protect "residents of Arizona who may return after injuries to their homes in this state," *id.* at 608, 623 P.2d at 38 (quoting *Knack v. Industrial Commission*, 108 Ariz. 545, 547, 503 P.2d 373, 375 (1972)), the court nevertheless decided the case on the issue of whether the employment contract was entered into in this state as required by the statute.[5]

■ The petitioner's public policy argument is subject to a similar objection. Undeniably, Arizona, like any state, has an interest in its residents. As strong as that interest is, however, the fact remains that § 23–904.A. simply does not make Arizona residency a factor for extraterritorial application of our compensation laws. Further, we note that no other state by statute or judicial decision has held that an injured employee is entitled to worker's compensation benefits based solely upon his residence within the state. 4 *Larson* § 87.60. For example, in *Iowa Beef Processors, Inc. v. Miller*, 312 N.W.2d 530 (Iowa 1981), the court rejected an interpretation of Iowa law which would provide extraterritorial coverage for Iowa residents regardless of any employment in that state. The court held that "Iowa domicile cannot rationally be equated with employment principally localized in Iowa." *Id.* at 533. The court concluded that to invoke Iowa's laws for out-of-state injuries, "[t]here must be some meaningful connection between domicile and the employer-employee relation." *Id.* at 534.

In summary, it simply cannot be concluded that the principal localization of DiMuro's employment with the American

5. Admittedly, § 23–904.A. is based upon the presumption that a worker hired or regularly employed here is a resident of our state. This case presents the unique situation in which the worker's employment does not fit within the statutory criteria yet he and his family are nonetheless residents of Arizona. We are constrained, however, to apply the legislatively-engrafted rules for extending extraterritorial coverage of Arizona's compensation laws.

**64**

League was in Arizona. And, even in states which give statutory weight to residence, a substantial connection between residence and the employment relationship is still required. No such connection exists here.

For the foregoing reasons, the award is affirmed.

GREER, Acting P.J., and HAIRE, J., concur.