758 P.2d 656

ARIZONA SOUTHERN COACH LINES, INC., Petitioner Employer,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

State Compensation Fund, Respondent Carrier,

Joseph Potter, Respondent Employee.

No. 1 CA–IC 3711.

Court of Appeals of Arizona, Division 1, Department B.

July 5, 1988.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by J. Victor Stoffa, Phoenix, for petitioner/employer.

Catherine A. Fuller, Chief Counsel, Industrial Com'n of Arizona by Lorraine E. Friedman, Asst. Chief Counsel, Phoenix, for respondent.

Robert K. Park, Chief Counsel State Compensation Fund by Christopher Kamper, Phoenix, for respondent carrier.

## OPINION

FIDEL, Judge.

The petitioner employer (ASCL), acting in the name of the respondent employee (Potter), alleged before the Arizona Industrial Commission that the respondent carrier (Fund) had improperly discontinued compensation payments to Potter. ASCL requested that the Commission investigate pursuant to A.R.S. § 23–1061(J), which provides in relevant part:

> The commission shall investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled. If the commission determines that payment or denial of compensation is improper in any way, it shall hold a hearing ... after receiving notice of such. impropriety.

Potter himself did not seek continued benefits and, despite having accepted substantial compensation payments from the Fund, has not personally filed a written claim for benefits with the Commission. The administrative law judge dismissed ASCL's request without a hearing because of procedural and jurisdictional defects. We affirm.

### Facts:

ASCL provided bus transportation to workers employed at the Palo Verde nuclear project in Arizona. The Fund was its workers' compensation carrier. In approximately 1981, ASCL began a similar operation in California at the Diablo Canyon nuclear project. ASCL disclosed this operation to the Fund and represented that the employees working in California were hired in Arizona.

Potter, a California resident with a California driver's license, became familiar with ASCL's Diablo Canyon operation and personnel while working at a nearby California truck stop. Potter submitted an employment application to ASCL's on-site supervisor, who locally tested Potter's driving skills. Potter was hired in late April or early May, 1983. ASCL and the Fund dispute the place of hiring, though Potter states that it was California. Except for one trip to Phoenix to deliver a bus, Potter worked exclusively in California.

In July 1984, the Fund sent ASCL a standard form "out-of-state" notice, advising of limits to its coverage. The Fund indicated (1) that it covered out-of-state injuries only for employees hired in Arizona and temporarily working out-of-state, *see generally* A.R.S. § 23–981(A) (effective January 1, 1984); and (2) that it covered employees hired out-of-state only for injuries occurring in Arizona and only upon the filing of a claim for benefits in Arizona. *See generally DiMuro v. Industrial Comm'n*, 142 Ariz. 57, 688 P.2d 703 (App. 1984). The Fund recommended that ASCL obtain additional coverage both for employees hired out-of-state and for employees working out-of-state. ASCL did not obtain such coverage for its California operation.

On November 26, 1984, the Fund received an ASCL supervisor's report, indicating that Potter claimed to have injured his back in a work-related incident in *California* on October 26, 1984. Both Potter and the supervisor signed this report. The next day, the Fund received a call from ASCL's bookkeeper regarding a standard form employer's report of injury that the bookkeeper had prepared based on the supervisor's report. During this call, the bookkeeper allegedly represented that Potter had been hired in Arizona, was tempo-

rarily working in California, and had not filed a California claim for compensation. On November 29, 1984, ASCL filed the employer's report with the Commission. It also sent a copy to the Fund.

On December 7, 1984, though Potter had submitted no claim form of his own, the Fund issued a notice of claim status accepting the compensability of Potter's "claim." On December 10, 1984, the Commission responded to the employer's report by soliciting a claim for benefits from Potter. *See generally* A.R.S. § 23–1061(C). Potter neither responded to this nor to a subsequent request. In the meanwhile, he had retained California counsel and filed a California compensation claim for the October 26, 1984, injury. On December 11, 1984, the Fund received a copy of this claim.

After issuing the acceptance notice, the Fund supplied the Commission with wage information. Based on this information, the Commission issued a determination of average monthly wage. The Fund also paid Potter compensation benefits, including extensive medical benefits for back surgery purportedly related to the October 1984 injury. It initially maintained that these payments were for an Arizona claim under Arizona law, but it subsequently acknowledged that Potter had not filed for Arizona benefits and that both states might have jurisdiction.

On July 15, 1985, the Fund received a copy of Potter's application for California penalty benefits for serious and willful employer misconduct. This triggered an investigation, which ultimately led the Fund to doubt that Potter had been hired in Arizona. It requested information from Potter, who responded that he had been hired in California for a temporary position and that, over a year later, ASCL had offered him work in Arizona if it discontinued the Diablo Canyon operation. The Fund's chief counsel promptly ordered discontinuation of further compensation to Potter. By this time, the Fund had paid some $46,000 in disability and medical benefits. The Fund filed no notice of claim status. Instead, on August 8, 1985, the Fund's chief counsel wrote ASCL demanding reimbursement of these payments, asserting that the Fund had erroneously paid benefits on ASCL's behalf based on "misrepresentations" that Potter was hired in Arizona, temporarily working in California, and had not filed a California compensation claim.

Potter did not protest or otherwise respond to the Fund's discontinuation of benefits. On December 13, 1985, however, ASCL requested a Commission investigation under A.R.S. § 23–1061(J). This request, which names Potter as the applicant and ASCL and the Fund as defendants, asserted that the Fund "has failed or refused to pay compensation to claimant on [ASCL's] behalf as required by law...." To support this assertion, ASCL noted that the Fund's acceptance notice had become final; "yet the ... Fund persists in refusing to pay benefits to claimant."

The Commission *sua sponte* raised the fact that Potter had not filed a claim and initially recommended rejecting ASCL's unorthodox request. However, it ultimately referred the matter for hearing. The presiding administrative law judge set a hearing and a pre-hearing conference. Potter and his California attorney were served with both notices, but they were excused from attending the pre-hearing conference. In a May 15, 1986, letter to the administrative law judge, the California attorney wrote that Potter "was hired in California, to work in California, and was injured in California." The attorney included documents relating to Potter's California claim and noted, "At the hearing in November of 1985, the attorney appearing on behalf of Arizona Southern Coach Lines made no assertion as to a lack of jurisdiction in California relative to this claim."

On May 28, 1986, the Fund moved to dismiss the hearing, asserting that claimants alone may invoke § 1061(J) and that, because Potter had failed to file a compensation claim in Arizona, the Commission lacked jurisdiction to proceed. ASCL asserted in response that the employer's report constituted a claim because it had been filed on Potter's behalf and that the Fund was precluded from denying jurisdic-

tion because its acceptance notice had become final. Both parties submitted numerous documents to support their positions. The administrative law judge cancelled the scheduled hearing and dismissed ASCL's request. He concluded that ASCL had misused § 1061(J) to "establish some 'round about' claim filing by Potter" and to compel the carrier to pay benefits that Potter did not seek. He further concluded that the Commission lacked jurisdiction because Potter had never filed a claim and that jurisdiction could not be established by estoppel.

ASCL requested administrative review and, in an amended request, sought to submit a November 1986 California determination denying compensation benefits to Potter. The administrative law judge affirmed the dismissal and excluded the newly submitted document as untimely.

ASCL petitioned this court for special action review. Though it served Potter and his California attorney, Potter has neither filed a notice of appearance nor an answering brief. *See generally* Rule 10(f), Rules of Procedure for Special Actions. The Commission, in contrast, has filed an answering brief. Because ASCL did not move to strike the Commission's brief, we do not consider whether the Commission has properly appeared as an advocate. *See generally Evertsen v. Industrial Comm'n,* 117 Ariz. 378, 573 P.2d 69 (App.1977), *approved and adopted* 117 Ariz. 342, 572 P.2d 804 (1977).

### Disposition:

Many issues are presented, few of which we need resolve. We make certain assumptions *arguendo* for the purpose of disposition:

1. We will assume that, had Joseph Potter found a procedurally appropriate manner in which to protest the Fund's termination of his benefits, his protest would not automatically be negated by the fact that he had failed to file an employee's benefit claim form. Rather, he would be entitled to argue at hearing that he had reasonably concluded such a claim form need not be filed, once the Fund had accepted his claim

and awarded him benefits based on the employer's report alone.

2. We will assume that the Fund proceeded inappropriately when it terminated Potter's benefits without embodying the termination in a notice of claim status.

3. We will assume that, because the Fund's failure to issue a notice of claim status deprived Potter of the ordinary procedural vehicle by which to protest termination, Potter could appropriately have requested the Commission's intervention and investigation pursuant to A.R.S. § 23–1061(J).

4. We will assume further that, had Potter been uncertain how to take such steps, his employer, ASCL, might appropriately have come to his assistance by requesting a § 1061(J) investigation on Potter's behalf.

Assuming, without deciding, that each of these propositions is correct, we find no basis to set the Commission award aside. The reason is that each of these assumptions is animated by the further assumption of an aggrieved worker who sought initially to open an Arizona claim and now seeks to preserve one. And that animating assumption is completely contradicted by the record in the present case.

Potter does not claim to have been misled by the Fund's initial acceptance of his claim into thinking that he could dispense with filing his own claim form. Nor does he demonstrate any interest whatsoever in reinstatement of his Arizona benefits. Indeed, though Potter's California counsel has corresponded with the Arizona Industrial Commission and is obviously aware of the pending proceedings, Potter has resisted every procedural opportunity to demonstrate an affirmative interest in this claim. Thus, ASCL does not attempt to advance Potter's interest in this proceeding; rather, transparently, it seeks to advance its own.

Yet, ASCL presents no interest that has been aggrieved. It cannot complain that these proceedings have adversely resolved the question whether Potter was hired in Arizona or out-of-state. The Fund may have terminated Potter's benefits upon the

assumption that he was hired in California; however, because the Fund has not embodied that assumption in a notice of claim status, the question remains wholly unresolved. ASCL is free to assert that it is entitled to the benefit of the Fund's coverage and to stand or fall on the merits of that assertion if and when the issue is formally drawn in another proceeding. Likewise, at that time, ASCL may advance, unimpeded by the present case, the argument that the Fund's original notice of claim status accepting Potter's claim has become final and binds the Fund inextricably to the inherent finding that Potter came within the coverage that the Fund provided ASCL. We express no opinion on the validity of that argument. Likewise, ASCL may argue in California, as it evidently wants to do, that Potter's claim for California benefits is precluded by his entitlement to Arizona benefits or offset by his receipt of Arizona benefits. We express no opinion on the validity of that argument.

We conclude that ASCL has failed to show that it is aggrieved in any way by these proceedings or that, within them, it risks prejudice of any kind. Its interest is not to avoid prejudice but rather to confer it; it seeks in Potter's name a determination of the finality of the Fund's original notice of claim status, hoping to wield that determination to the prejudice of Potter or the Fund in litigation anticipated elsewhere. The administrative law judge appropriately declined to let ASCL use Potter, a disinterested non-participant, as a cat's paw to that end.

We hold that ASCL has no standing, and on that limited basis we affirm the dismissal of its A.R.S. § 23–1061(J) request.

CONTRERAS, P.J., and GREER, J., concur.